JOHN JONES *vs.* BENJAMIN W. JONES.—*December,* 1849.

The intention to raise an election, must be clear and manifest from the will itself.

That intention must be collected from the face of the instrument, and without a clear and express manifestation, it cannot be presumed to extend to property which did not otherwise pass under the will.

If a will sufficient to pass personalty, gives a legacy to the heir, and devises the realty away from him, he may take the legacy. and claim the estate by descent; but if the legacy be on the express condition annexed, that he shall confirm the devise, he cannot take the legacy and disaffirm the devise.

The wills of infants and feme coverts being void as to realty, raise no implication, and the heir may claim both the legacy and the land devised to another, by such a will.

A will of lands that is not executed and attested according to our statutes, can create no election as to the lands here, *from implication*, because such an instrument is no will here, and, therefore, inoperative.

In this case, a will was executed in *Pennsylvania*, before two witnesses only, and, therefore, void as to the lands in *Maryland.* It contained no express condition requiring an election as to the lands here. HELD: that it could not operate to divest a child of his inheritance here, or put him to his election.

APPEAL from the *Court of Chancery.*

*Evan Jones,* a citizen of *Chester* county, in the State of *Pennsylvania,* died in September, 1845, seized of real and personal estate, both in that State and in *Maryland,* leaving a last will and testament, by which he bequeaths as follows:

"*First.*—I give and bequeath to my son, *Benjamin,* all my estate, real, personal or mixed, with the following exceptions: All the accounts against *John,* I give to him, and the improvements I made on the farm belonging to his mother, which I think is sufficient. I allow the line for him on the east side to be along a new post fence on the west side of the creek crossing the creek at the head of said fence, and running to a ditch from *Preston's* line, and all the land north of that ditch, that I bought of *Whitting,* I leave to *John,* and the right of water bought of *Townsend.* I leave to John my farming utensils, furniture, timber, wheels, (my wardrobe to my grand-daughter, *Mary W. Jones,*) the line at the south end of the above named fence, to due south to the middle of the road leading to *Wilmington,* past *Osmond's* factory, thence down said road to the line of *Osmond,* then crossing the creek to my land that I bought of *Russell,* which is to be the boundary between them,

and both equally to support the fence and clean out the ditch, and if *John* marries, and has children, *Benjamin* to make *John* a title for his half of his mother's land, which is a condition of this, my will, still *John* to have the use of *Benjamin's* half of his mother's farm, according to the above described bounds, the above post fence ends at an ash tree, which I make the corner, thence south-east to a gum that the log on the *Mercer* creek is chained to, from thence the same course to a small hickory near the road, marked, the limbs hanging down, from thence to the middle of the road, and then as described as above, I make the above a *sine qua non*, and if either attempts to break it, is to have no benefit to my estate, but all to go to the one willing to fulfill. I likewise constitute my son, *Benjamin W. Jones*, my sole executor."

This will was executed in the presence of two witnesses, and, therefore, not capable of passing real estate in *Maryland*. The devisees, *John* and *Benjamin*, were the only heirs at law of the testator, upon whose death letters testamentary were granted to the latter, and *John* took possession of the real and personal estate in *Pennsylvania*, given him by the will.

On the 22nd of July, 1846, *Benjamin*, the appellee, filed his bill in chancery, charging, in substance, that the defendant, *John*, claims all that the will gives him, and that he is, in addition, entitled as heir at law to an equal share of the lands in *Maryland*, of which he insists the said testator died intestate, by reason of the execution of his will in the presence of two witnesses only. That defendant acting upon this view of his rights, has recently cut down and carried away from the land in this State, timber and ornamental trees, and is now committing other acts of waste to the irreparable injury of the property, against which acts the complainant asks relief by injunction, and further prays, that if defendant be not considered as having already made his election, by taking possession of the property devised to him by the will, he be now put to his election, and for general relief. An injunction was accordingly granted.

The answer of the defendant admits that he had taken possession of the lands devised to him in *Pennsylvania*, but in-

sisting upon the great inequality in the value of the property given to him and complainant by the will, maintains that the will is restricted, and was by the testator intended to be restricted in its operation to his *Pennsylvania* property.

Proof was then taken, which it is unnecessary to state, as the questions decided relate exclusively to the construction of the will.

The chancellor (JOHNSON,) on the 28th of December, 1847, passed a decree ordering the defendant to proceed to his election, whether he will hold said real estate situated in this state, as heir at law of the testator, or not, within sixty days after service of decree upon him.

Accompanying this decree, the chancellor delivered an opinion, in which, after stating the facts of the case, he says:

" I am fully convinced that the testator intended to dispose of his whole estate, wherever it might be situated, and that there is nothing upon the face of the will by which his *Maryland* property can be exempted from its operation, rather than that which is situated in *Pennsylvania*. No inference of a contrary intention, I think, can be drawn from the circumstance, that the will, though good as to the lands in *Pennsylvania*, is defectively executed as to lands here, because it is manifest from the paper itself, that it was drawn without the assistance of counsel, or of any one likely to know the difference between the law in the two States, in regard to the execution of wills. I am, therefore, of opinion, that the testator did not mean to die intestate of any portion of his property.

But the will not being so executed as to pass lands in *Maryland*, is inoperative in respect to such lands, and the defendant would be entitled as heir at law to a moiety of such land, unless he is precluded by the doctrine of election from asserting his title, and this is the remaining question to be considered. There can be no doubt that, in order to impose upon a party claiming under a will the obligation to elect, the intention of the testator must be expressed or clearly implied upon the will itself, and if the obligation to elect depend upon the disposition by the testator of that which was not his own, it must plainly

appear, that he intended to make such disposition, and also that the person taking a benefit under the will, should take under the condition of giving effect thereto. 2 *Roper on Leg.*, 389.

Upon the face of this will, there can, I think, be no doubt that the testator did intend to dispose of property which he had no right to dispose of. He first describes the land which *John* is to have, and then says, "if he marries and has children, *Benjamin* to make *John* a title for his half of his mother's land, which is a condition of this my will; still *John* to have the use of *Benjamin's* half of his mother's farm, according to the above described bounds." It, therefore, clearly appears upon the face of the will, that the testator undertook to dispose of that which was not his own; and the clause in which he says, "I make the above a *sine qua non*," &c., shows too plainly for dispute, that he intended that all who took any benefit under the will, should take upon condition of giving full effect thereto.

If, therefore, this will had been properly executed to pass real estate in *Maryland*, there can be no doubt that all who took benefits under it, must have submitted to its dispositions throughout. But it is said, that a will not executed so as to pass real estate, will not put a devisee to his election, an instrument of that description not being regarded as a will at all. There seems to be a difference between the effect of an unattested will, which merely professes to devise real and personal estate, and a similar will, which gives pecuniary legacies upon the express condition that the legatee shall give up real estate, by the will attempted to be disposed of. In the latter case, the legatee will be put to his election, though in the former he would not; as if the will contains a mere devise of real estate, and bequests of personal estate, unaccompanied by conditions, the will, if not attested, could not be read as to the real estate. *Carey vs. Askew*, 8 *Ves.*, 492. *Sheddon vs. Goodrich, ib.*, 481.

But if there be an express condition, that any legatee who may not comply with its terms, shall forfeit all benefit under it, there the heir being a legatee, will, by force of the condition,

be obliged to make his election.    The case of *Boughton vs. Boughton*, 2 *Ves. Sen.*, 12, is express to the point, and is not only believed never to have been shaken, but the doctrine established by it, appears to me so strongly recommended by natural justice, that no disposition is felt to depart from it.

The Court of Appeals of this State, in the case of *McElfresh vs. Schley and Barr*, 2 *Gill*, 181, say, "there never could have been a doubt of the power of a testator to annex what condition he pleased to his estate; and that the principle established by the cases is, that no one shall be permitted to take under an instrument, and defeat its provisions." And in the same case, when speaking of void wills, either on account of the incapacity of the testator, or the want of attestation, according to the statute, they remark, "that such instruments create no case of election by implication." But I presume there can be little or no doubt, looking to the reasoning of the court throughout the entire opinion, that effect would have been given to an express condition, even in the case of a will not attested, as required by the statute. The case in the Court of Appeals also decides, that the doctrine of equitable election is as applicable to the heir at law, as to any other devisee.

But before a party can be considered to have made an election, it must be shown that he possessed full knowledge of his own rights, and of the circumstances of the testator; and as I am not satisfied in this case, that the defendant, *John,* had full knowledge of all the facts which might have influenced his judgment, I will not hold him actually to have made his election, but will pass a decree requiring him in some reasonable time to elect whether he will take under the will, or his moiety as heir at law of the land in *Maryland.*"

From this decree the defendant appealed.

The cause was argued before CHAMBERS, SPENCE, MAGRUDER, MARTIN, and FRICK, J.

By OTHO SCOTT, for the appellant, and
By McLEAN, for the appellee.

Frick, J.. delivered the opinion of this court.

The controversy in this case arises under the construction of an instrument of writing purporting to be the will of *Evan Jones*, in which the testator undertakes to dispose of the lands of his wife upon conditions, which it is claimed impose upon the devisee, one of his heirs, the obligation to confirm to the other a devise to him of "all the testator's (own) estate, real, personal and mixed." It was presented in the court of chancery, by the appellee, as a case of election, and the chancellor having so treated it, the present appeal is from his decree to the Court of Appeals.

The testator was a citizen of *Pennsylvania*, and the will in question was executed in the presence of *two* witnesses, conformable to the laws of that State, and admitted to be valid and operative, to pass the property of the testator there. But he had also other lands in the State of *Maryland*, upon which, for want of proper attestation under the laws of this State, the will could not operate, unless under certain conditions therein, which, it is contended, impose an election on the parties, and give effect to the will, in regard to its action upon the lands in this State.

The intention to raise an election must be clear and manifest from the will itself. That intention must be collected from the face of the instrument, and without a clear and express manifestation, it cannot be presumed to extend to property which did not otherwise pass under it. If the will is susceptible of a construction that does not require it, then, by reason of its imperfect execution here, it is not a case where the party can be put to his election as to the property in this State. This instrument, in the first instance, may seem to indicate, on the part of the testator, an attempt to dispose of the whole of his property. The first clause is: "*I give and bequeath to my son Benjamin, all my estate, real, personal and mixed, with the following exceptions.*" These general terms would necessarily pass all which the testator had power to dispose of. But it must be by an instrument perfect in all the conditions which the law requires, to make it operative. To pass lands in *Mary-*

*land,* required the presence of *three* witnesses at its execution; and as owner of such lands, the testator must be presumed to know the laws that regulate the disposition, and constitute a valid devise of it.   As it stands, it could so far pass no other than lands in *Pennsylvania,* where, in point of statutory execution, it is adequate to that purpose.   As to the lands in *Maryland,* he died intestate, unless the further provisions in the will, by manifest and clear intention, express such conditions as impose on one of the heirs, by his election in *Pennsylvania,* to release to the other the lands of the testator in *Maryland.*   And in the case of an imperfect will, such condition cannot be raised by implication.

What, then, are the conditions of this will, so far as they are susceptible of analysis, and of being extracted from the confused repetition and transposition of the views of the testator? He had one other son, *John,* the appellant, and to carve out an estate for him, he devises lands in *Pennsylvania,* adjoining his own, and held by him in right of the mother, to *John,* and says: *"If John marries, and has children, Benjamin is to make John a title for his half of his mother's land, which is a condition of this, my will."*   He had before given to *John* "the improvements on the farm belonging to his mother," and established a "line of boundary between them," (the brothers;) which allots to *John,* with a very slight exception, the whole of the mother's lands, and then imposes on *Benjamin* the condition stated, to make to *John* a title to his share thereof.   This condition is imposed on *Benjamin* exclusively, who, under the general devise, took all the testator's land in *Pennsylvania,* at least, and which, as is in proof, was far the larger portion of the whole property.   But can this condition, from its terms, and in connection with its immediate antecedent, be stretched beyond the express limitation and import of it, to make to *John* the title there directed?   To this, by every sound rule of construction, it must be restricted; and so far, we find no express condition on *John* to do any act but the one mutual between the brothers, to preserve the ditch and fencing.

The testator then proceeds, *"John* to have the use of *Ben-*

*jamin's* half of his mother's farm, according to the above pre-scribed bounds;" and after recurring for the third time for ad-ditional certainty, to the division line, he says: "I make the above a *sine qua non*, and if either attempts to break it, is to have no benefit of my estate, but all to go to the one willing to fulfil." Construed as a condition to what here precedes it, we have another stipulation prescribed to *Benjamin*, alone, to leave *John* in the possession of the mother's property, and an obligation on both, not to break the line established by the will. If either attempt to break this last division line, or *Benjamin* disturbs the possession in *John* of the mother's property, he forfeits all benefit under the will. To these clauses imme-diately following the first condition, this *sine qua non* must be restricted. To extend it beyond, and apply it to *all* the com-ponent parts of the will, would be to enlarge its terms, and make an intention for the testator which is not expressed, and cannot even be fairly implied against the form of expression used by the testator. "To break *it*." Not the will certainly, or he would naturally so have expressed it; but the condition which is the antecedent to the pronoun "it," and restricted to that by the construction which we think it alone warrants.

If the general scope of this will can be gratified without in-cluding the *Maryland* lands, the presumption in favor of the heir will prevail. In prescribing this *sine qua non* condition, it is next to impossible that the testator could have had in his mind the *Maryland* property, and not so expressed it; and it is difficult to find a case raising an election, where the property operated upon has not been particularly designated, or clearly embraced or referred to in the will. *Boughton vs. Boughton,* 2 *Vez.*, *Sr.*, 12, is among the first cases in which an heir at law was put to his election under a will imperfectly executed. But there the *express* condition is relied upon. And unless such condition be expressed, the heir is not bound to confirm the devise. 1 *Jarman*, 390. 8 *Vez.* 481. If a legacy be given by a will, sufficient in its requisites to pass personal property, and which devises the realty away from the heir, to whom the legacy is given, he may take the legacy and claim the estate in

virtue of title by descent. But if the legacy be on the express condition annexed, that he shall confirm the devise, he cannot take the legacy and disaffirm the devise. 1 *Jarman*, 377. So the will of an infant being void as to realty, raises no implication, and the heir may claim both the legacy and the land devised to another by such a will. 1 *Vez., Sr.,* 278. *Jarman,* 389. And so also with regard to the will of a *feme covert.* 9 *Vez.* 370.

If, then, there be no express condition upon *John* to convey this *Maryland* property to *Benjamin,* we are not at liberty to imply it. The intention to make such a condition, and raise a case of election, must plainly appear (as we have seen,) on the face of the will. We must be sure that it was the testator's intention to include these *Maryland* lands in his will; and wherever the devises rest upon condition, nothing is to be left to interpretation, but it must be clearly expressed.

We find a condition upon *Benjamin,* that he should convey to *John,* in the contingency mentioned of *John's* marriage, and the birth of a child, and this conveyance *Benjamin* has executed. We find further, that the possession in the meantime, in *John,* of the mother's property, and the acquiescence of both in the line of boundary established between them, is another condition in the will; and that *John* is in possession, and no controversy exists about the lines.

Thus far the disposition of the testator, as to his property in *Pennsylvania,* seems to be gratified; or if otherwise, it becomes a subject of the consideration of the proper *forum* in that State, and not in *Maryland.* Upon a careful examination we can find no condition that requires of *John* to convey his interest in the *Maryland* lands to *Benjamin;* and without such condition it cannot be said, that a will otherwise inoperative in this State, can impose upon him an election here, between the lands devised to him in *Pennsylvania,* and his rightful inheritance in this State. A will of lands that is not executed and attested according to our statutes, can create no election as to lands here, *from implication;* for the reason given, that such an instrument is no will here, and, therefore, inoperative. What-

ever may be its construction and effect in *Pennsylvania,* it cannot operate to divest either party of his inheritance here, or put him to his election. There is no such express condition in this will, and we cannot, as before said, imply it.

Finding nothing, therefore, in this will of *Evans Jones,* that can impose upon *John* a release of his claim upon the lands, or to make his election in *Maryland,* we are compelled to reverse the decree of the chancellor.

DECREE REVERSED.