GLADYS GWENDOLYN DAVIS, Single, and VIVIAN DAVIS MICHAEL, joined by her next friend and husband, ROBERT MICHAEL v. JULIA DAVIS STROPLE

29 So. (2nd) 364                                    January Term, 1947
March 11, 1947                                              En Banc

*J. E. Kennedy* and *Austin L. Richardson,* for petitioners.
*Askew, Earle & Zewadski,* for respondent.

PER CURIAM:

This cause having heretofore been submitted to the court on petition for writ of certiorari upon the transcript of records and briefs and the record having been inspected, it is ordered that said petition be and the same is hereby denied.

THOMAS, C.J., TERRELL, CHAPMAN, ADAMS and BARNS, JJ., concur.

BUFORD, J., dissents.

BUFORD, J., dissenting:

We have for review on certiorari under Rule 34 an order denying motion to dismiss bill of complaint.

The bill of complaint was one to quiet title. Plaintiff's claim of title is based upon an alleged devise by will. The bill shows that one Walter Oral Davis was a citizen of West Virginia and that he died in that State testate on the 13th

day of June, 1941, and at the time of his death he owned lands in Pinellas County, Florida, described as follows:

"Lot 9, Block 8, Safford's Addition of St. Petersburg, Florida as the same appears by plat duly recorded in public records of Pinellas County, Florida.

In his last will and testament Davis bequeathed certain property to his two daughters and attempted to bequeath to his wife, Julia Schroder Davis, "houses at 227 and 227½ Dartmoor St., St. Petersburg, Florida (which is alleged to be the same property as above described) together with all the furnishings." He also bequeathed to his wife "all money in First National Bank" and also "to my loving wife, she shall have what furniture, etc. at 210 Grant Avenue as she desires balance to go to my two daughters".

All the property bequeathed by the will except that described as being in Pinellas County, Florida, was in the State of West Virginia.

The purported will was signed by Walter Oral Davis but not in the presence of any subscribing witnesses. It, therefore, follows that the will passed no title to Julia Schroder Davis to the real estate located in Pinellas County, Florida, though it was sufficient under the laws of West Virginia to pass all property located in West Virginia to the devisees named in the will.

The bill alleges however, that the plaintiff at the time she accepted the terms of the will did not know that a holographic will without witnesses was not entitled to probate in the State of Florida and did not serve to pass title and that she acted in good faith in accepting the terms and provisions of the will believing that it was sufficient to pass title to the lands in St. Petersburg to her and had she not so believed she would not have accepted the terms of the will but would have dissented to the terms of the will and would have claimed dower in the lands in the State of West Virginia devised to the two daughters of the decedent, which dower she was entitled to under the laws of the State of West Virginia and which consists of a one-third life estate in all of the real property in the State of West Virginia. She also alleges that if the defendants had indicated to her that they were at some future

time going to claim interest in the lands in St. Petersburg, plaintiff would not have accepted the gift to her which was in lieu of dower, but would have claimed dower, as above stated. She avers that the will was duly probated and the estate was administered in Mongalia County, West Virginia, and that the personal representatives of the said estate delivered to the defendants the money and other personal property bequeathed to them and placed the said defendants in possession of the real estate devised to them and each of said defendants accepted said personal property and accepted and went into possession of said real estate in accordance with the terms of the will. She further alleges that during the progress of the administration of the said estate the personal representative (naming him) placed plaintiff in possession of the property described hereinabove and on March 9th, 1942, the said personal representative advised plaintiff in writing as follows:

"All legal procedure relative to your Florida property has been completed; a non-tax certificate secured from Comptroller of Florida, which certificate has been filed, together with certified copy of the will and probate, with the County Judge of Pinellas County, Clearwater, Florida. This completes clearing of the title for you on that property."

Paragraph 11 of the Amended Bill of Complaint is as follows:

"11. The plaintiff further avers that, even though the Court should hold that this plaintiff acquired no title to the lands described in paragraph 3 of this amended bill by virtue of said holographic will, the full title to said property vested in plaintiff by operation of law, for that plaintiff and the said Gladys Gwendolyn Davis and Vivian Davis Michael constituted the sole and only heirs at law of said decedent at the time of his death, and inasmuch as said defendants accepted the properties bequeathed to them in said will and ratified and acquiesced in all of the terms and provisions thereof, they are now estopped from asserting any title to or claim upon any property of said decedent except that bequeathed to them in said will, and, upon so accepting the properties devised and bequeathed to them the full legal title to the lands described

in paragraph 3 of this amended bill, devolved into plaintiff as heir at law of said decedent."

It appears to be the contention of the plaintiff in the court below, appellee here, that because the two daughters accepted the terms of the will, which terms were valid and enforceable in the State of West Virginia, they are barred from making claim to any property that was intended to be devised by the will to another, but which devise was of no force and effect. There are some authorities which appear to support this contention, but we do not believe this doctrine is to be applied where, as in the case at bar, there are in a will valid and legal dispositions of property to some devisees because the will is legal and valid as to those properties but is void as to other attempted dispositions because the attempted will is not recognized as a will in the jurisdiction where such devisees are located.

We think that the true rule is as stated in Kearney v. Macomb, 16 N. J. Equity 189. In that case the pertinent facts were stated as follows:

"Philip Kearney, one of the trustees, died on the tenth of April, 1849, leaving the complainant the sole surviving trustee under the settlement.

"He left Susan Macomb and Philip Kearney, his only children and heirs at law, surviving him. He left a will bearing date on the third of September, 1847, executed in the presence of two witnesses only, and therefore invalid to pass the title to real estate under the law of this State as it then was. The bill was admitted to probate in the city of New York, the place of the testator's domicil, on the eleventh of May, 1849. By his will he devised to his son Philip certain real and personal estate in the states of Illinois and Wisconsin, adding, by way of explanation to the devise, this clause: 'The above is given to my son as an equivalent to my homestead at Newark, which I had desired to divide between him and his sister, which he did not wish, but preferred this arrangement.' In the closing clause of the will the testator adds: 'My affection for my surviving children being equal, my desire has been to divide my estate equally between them.'

"The said Philip Kearney, in and by his said will, also devised to his executors the Kearney homestead in Newark, in this state, in trust for his daughter Susan, during her life; at her decease 'the use and occupation of the premises to be for the testator's brother Archibald, so long as he lives; at his decease for the benefit of Susan's children, and should her children die without leaving issue, then to the testator's nearest heir.

"The will devised a large amount of real estate in New York and elsewhere, to each of the testator's children, and is operative as to all the property devised, except the real estate in New Jersey, which, upon the testator's death, descended to and vested in his two children as tenants in common fee. Being so seized, Philip Kearney, the son, by deed bearing date on the sixteenth of July, 1850, conveyed and released the undivided half of the homestead property to his sister, Susan Macomb, in fee simple."

And, after some discussion, the court said:

"But it is urged that although the will is invalid and inoperative to pass land in this state, yet if the son and daughter of the testator, who are devisees under the will, would avail themselves of other parts of it, they must consent to carry out the devise in regard to this land also. They are put to their election to stand by the will *in omnibus* or not to claim under it at all. And inasmuch as the land is, by the will of Philip Kearney, devised to his executors in trust for certain purposes in the said will specified, and the heirs at law have certain real estate elsewhere devised to them in said will, which they have elected to take, they are bound to permit the title to the Newark property to pass to the trustees for the purposes specified in the will.

The doctrine of election is founded upon the principle that a person shall not be permitted to claim under any instrument, whether it be a deed or will, without giving full effect to it, in every respect, so far as such person is concerned. And the ground upon which courts of equity interfere is, that the purposes of substantial justice may be obtained by carrying into full effecct the whole intention of the testator. 1 Jarman on

Wills 385; 2 Roper on Leg. 1567; 2 Story's Equity. Jur. No. 1075-7.

"Where the devise is valid, but inoperative because the title is not in the devisor but in the devisee, the application of the principle is clear.

"But where the devise is invalid because not a good execution of the power to devise, or because of the infancy of the devisor, or because the will is not duly executed to pass real estate, the heir-at-law may take both the land devised and also the legacy. In Hearle v. Greenback, 1 Vesey, sen. 298, Lord Hardwicke said: 'The infant is not obliged to make her election, for here the will is void; and when the obligation arises from the insufficiency of the execution or invalidity of the will, there is no case where the legatee is bound to make an election, for there is no will of the land. A man devises a legacy out of land to his heir-at-law and the land to another; the will is not executed according to the statute of frauds for the real estate; the court will not oblige the heir-at-law, upon accepting the legacy, to give up the land.' In such case the heir will not be required to give up the legacy unless the legacy was bequeathed upon an express condition to give up the real estate. Boughton v. Boughton, 2 Vessy, sen. 12.

"In Carey v. Askew, cited 8 Vesey 492, 497 Lord Kenyon said: 'The distinction was settled, and was not to be unsettled, that if a pecuniary legacy was bequeathed by an unattested will, under an express condition to give up a real estate, by that unattested will attempted to be disposed of, such condition being expressed in the body of the will, it was a case of election; as he could not take the legacy without complying with that express condition. But Lord Kenyon also took it to be settled as Lord Hardwicke had adjudged, that if there was nothing in the will but a mere devise of real estate, the will was not capable of being read as to that part; and, unless, according to an express condition, the legacy was given so that the testator said expressly the legatee should not take unless that condition was complied with, it was not a case of election.' The principle was affirmed by Lord Eldon as a long settled doctrine, in Sheddon v. Goodrich, 8 Vesey 482.

"The doctrine of these cases is, that the heir-at-law of the testator claiming a legacy under the will, and also claiming real estate as heir-at-law against the will, the will being inoperative as to real estate by reason of defective execution, the heir will not be put to his election, but will take both the legacy and the land. In such cases 'the heir is allowed to disappoint the testator's attempted disposition by claiming the estate in virtue of his title by descent, and at the same time take his legacy on the ground that the want of a due execution precludes all judical recognition of the fact of the testator having intended to devise freehold estates; and therefore the will cannot be read as a disposition of such estate for the purpose even of raising a case of election as against the heir.' I Jarman on Wills (ed 1849) 389; 1 Dev. & Bat. Eq. 634; 4 Dess. Ch. R. 274; 1 Lead Cases in Eq. (3d ed) 404.

"Upon the well settled doctrine of the court of equity, this is not a case in which the heir could be put to his election if all the property affected by the will were within the jurisdiction and under the control of the court. There is no condition annexed to the devise to the heir-at-law, either express or by necessary implication. It is no will of land in this state. The will is not executed and attested according to our law, and can create no case for election as to lands here, from implication. Jones v. Jones, 8 Gill 197."

In the case of Gardner Ives Porter, et al v. Robert S. Baynard et al, opinion filed October 11, 1946, not yet reported, certain residuary legatees under a will attacked certain bequests made in the will upon the ground that those bequests offended the doctrine against perpetuities. They were sustained in their contention as to the illegality of those bequests, with the result that the propery so bequeathed became a part of the residuary estate and those complaining residuary legatees became enriched by striking down one part of the will under which they claimed as beneficiaries.

The amended bill of complaint in this case does not show any necessity of election by the daughters of the testator, nor does it show that they have ever exercised any election. It does not show that they have ever, by act or deed, parted with any property interest in the Florida real estate; nor

does it show that those heirs are estopped from claiming their interest in the Florida real estate.

The most that can be said is that the plaintiff in the court below, appellee here, alleges that she was ignorant of the law in Florida and, therefore, ignorant of the fact that the purported will passed no title to Florida real estate, and because of this ignorance she did not take action which she otherwise would have taken. There is no adage older than that ignorance of the law excuses no one.

I think the amended bill of complaint is without equity.