SHAHOOD, J.
This case involves the purchase of a restaurant and bar business. After the buyers defaulted on the mortgage, the seller. filed a foreclosure action. The trial court entered summary judgment in favor of the seller. ,We affirm. .
Buyers, Heidi Leuders (“Leuders”) and Mario Latte (“Latte”) (collectively “buyers”) formed L & L corporation and purchased a restaurant/bar business from Carlbob, Inc. (“Carlbob” or “seller”). They executed a promissory note in favor of seller, as well as a security agreement, UCC-1, and Liquor- License Lien. An Inventory/- Equipment List, approved and signed by buyers and seller, was incorporated into the Security Agreement and the Bill of Sale. The list did not include certain slot machines which were in the restaurant at the time of the sale and are the basis of this appeal.
A few months after purchasing the restaurant, Latte was arrested and charged by the City of Fort Lauderdale with engaging in gambling. The buyers subsequently defaulted" on the note by failing to make the required payments, and did not cure the default. - As a result, "seller filed suit. Buyers answered the complaint, raising the affirmative defenses of setoff, unclean hands/estoppel," and fraud in the inducement. The thrust of their defenses was that seller fraudulently misrepresented material facts relating to the conditions of the business and premises. Specifically, buyers asserted that (1) seller had represented that the slot machines on the premises were a valid source of revenue when he knew that .gambling was illegal; (2) seller had misrepresented the condition of the premises and had failed to maintain the roof, air conditioning, oven and- kitchen; (3) seller.had concealed the fact that he had- obtained wine and liquor from other sources and illegally refilled wine and liquor bottles in order to avoid sales and liquor taxes; and (4) seller had misrepresented to buyers that the business had been inspected and that there was a valid certificate of inspection.[1] Buyers also counterclaimed for fraud in the inducement, indemnification, setoff, and recision.
*514 Seller moved for summary judgment. Carl Dressel (“Dressel”), president of Carlbob, submitted an affidavit stating that he sold the assets of Doc’s Saloon to buyers in exchange for a promissory note in the amount of $125,000. The note was secured by a security agreement and liquor license lien.
In support of the motion, seller also submitted the depositions of Leuders, Latte, Dressel, and George Ivan (“Ivan”), the real estate broker. In her deposition, Leuders stated that on the day she and Latte went to the bar to take inventory, the broker informed them .that the slot machines, along with the cigarette machine and vending machines, did not belong to the bar but were placed there with the agreement that the owner would receive a commission on sales from the machines. Leuders, a recent immigrant from Germany, claimed that she did not understand what she was signing at closing and did not have an interpreter. She trusted the broker and felt that Dressel was an honest man.
In his deposition, Latte testified to having been in the bar on prior occasions and having seen people openly playing the video slot machines. He observed that, when the patrons won, they would receive a ticket from the machine and give it to the bartender in exchange for money. Latte knew 'that the slot machines had stickers bearing the name of a third party, but claimed he did not know that they were owned by this third party and were not property of the bar. Nevertheless, he understood that the bar would get 75% of the earnings and the- third party would get 25%. According to Latte, the seller had told Latte not to disburse the cash at' the same time the ticket was received, but to put the money in an envelope and disburse it the following day. Despite this instruction, Latte claimed he did not know that what he was doing was illegal. Latte stated that he paid more for the bar than what he thought it was worth because of the money to be gained from the slot machines.
Latte stated that he was induced to make an offer by the broker, who told the buyers that it was a good business and the machines make a lot of money. Latte was under the impression that the broker was representing Dressel. Latte stated that he was never allowed to examine the books of the business and he and Leuders never forced the issue because Dressel seemed like an honest person. He also stated that he did not understand what he was signing at the closing, and signed on the advice of his attorney.
Ivan acknowledged that his agreement was with the seller, who paid him a commission on the sale. He denied that the seller ever represented that the. slot machines were an integral part of the business. According to Ivan, he wrote the inventory list and explained to Latte and Leuders that some of the machines, i.e., the jukebox, the cigarette machine, the slot machines, were owned by other companies and the buyers could elect to renew the contracts or not, but they were not part of the inventory. Ivan admitted that he never suggested that the buyers review the financial records of the business.
In Dressel’s deposition, he acknowledged having the “video game machines” in his bar. He initially denied that he gave cash in exchange for the tickets generated by the machines when customers won, but ultimately, on the advice of his attorney, declined to answer questions about whether the bar ever gave out cash to customers. Dressel stated that he received a percentage of the money that went into the machines, but declined, on Fifth Amendment grounds, to state whether the money was reported as income. *515 Dressel recalled telling the buyers that the video game machines were a source of revenue for the business, but could not recall stating an exact amount of monthly revenue. In addition, Dressel denied telling the buyers that he did not have daily financial records for the company; he explained that what he told them was that this was an asset sale, not a sale of records, and thus did not involve the business’ good will and profitability. Dressel claimed that after the closing he discarded all of his records from the business.
In support of his memorandum opposing the motion for summary judgment, Latte filed an affidavit stating that during the negotiations for the sale of the business, Dressel represented that the annual revenue from the slot machines was between $80,000 and $100,000. It was Latte’s understanding that the slot machines were part of the business that was being.purr chased. Although he acknowledged that the slot machines were not listed on the inventory list, he claimed that he had an oral agreement with the lessor of the machines that the machines would be left in the business. Latte asserted that, because he is a recent immigrant to this country from Italy, he was unaware that gambling is illegal in the state of Florida or that the operation being run by Dressel was illegal. Moreover, because the slot machines were being operated out in the open, Latte never questioned the legality. He first learned that the machines were illegal when the police raided the bar and confiscated the machines.
The record indicates that Dressel signed a Business Owner’s No Lien Affidavit as well as a post-closing agreement in which he affirmatively represented to the buyers that he knew “of no violations of municipal, county or state laws and ordinances pertaining to the above-described property, or in the use and occupancy thereof, or in the leased premises” and had “complied with all laws, rules and regulations imposed by government or otherwise relating to the assets transferred to Buyer under that certain. Sales Contract.”
The issue in this appeal is whether or not, as a matter of law, there was a fraudulent misrepresentation with regard to whether the- transaction included the transfer of the slot machines. The buyers acknowledge that the sales contract clearly did not include the slot machines, but assert that they are nevertheless entitled to recovery because Dressel made them believe they could continue to use the slot machines and generate revenue from them. They argue that their status as “recent, unsophisticated immigrants” supports their position that Dressel exploited their “lack of sophistication” and ignorance of the fact that slot machines are illegal.
Without admitting that there was a misrepresentation, seller argues that, in any event, the buyers were not justified in relying upon a misrepresentation which they knew or should have known, with the exercise of some diligence, was false. We agree. Buyers’ ignorance of the law is not excused .simply because they are not from this country. See generally State v. Beasley, 580 So.2d 139, 142 (Fla.1991) (“As to notice, publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the consequences of their actions”); see also Davis v. Strople, 158 Fla. 614, 29 So.2d 364 (1947) (ignorance of the law is no excuse). The fact that gambling may be legal in the buyers’ respective countries is irrelevant.' Moreover, even if the slot machines and the revenues gained from them had been a subject of the contract, buyers would still have no action on the. contract because such activity is illegal. See Katz v. Woltin, 765 So.2d 279, 280-81 (Fla. 4th DCA 2000) (recognizing that agreements in violation *516 of public policy are void and unenforceable).
Consequently, with respect to all issues raised, we affirm the trial court’s entry of summary judgment and final judgment in favor of Dressel.
AFFIRMED.
STEVENSON, J, and GEIGER, DWIGHT L., Associate Judge, concur.

. In this appeal, the buyers focus only on alleged misrepresentations concerning the slot machines. Therefore, any disputed issues concerning the buyers' other affirmative defenses, which might otherwise have precluded summary judgment, are waived, and will not be addressed in this opinion.