## FULLER *v.* OREGON

No. 73–5280.  Argued March 26, 1974—Decided May 20, 1974

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. DOUGLAS, J., filed an opinion concurring in the judgment, *post*, p. 54. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 59.

*J. Marvin Kuhn* argued the cause and filed a brief for petitioner.

*W. Michael Gillette,* Solicitor General of Oregon, argued the cause for respondent. With him on the brief was *Lee Johnson,* Attorney General.*

MR. JUSTICE STEWART delivered the opinion of the Court.

In this case we are called upon to determine whether Oregon may constitutionally require a person convicted of a criminal offense to repay to the State the costs of providing him with effective representation of counsel, when he is indigent at the time of the criminal proceedings but subsequently acquires the means to bear the costs of his legal defense.

The petitioner Fuller pleaded guilty, on July 20, 1972, to an information charging him with sodomy in the third degree.[1] At the hearing on the plea and in other court proceedings he was represented by a local member of the bar appointed by the court upon the petitioner's representation that he was indigent and unable to hire a lawyer. Fuller's counsel in turn hired an investigator to aid in gathering facts for his defense, and the investigator's fees were also assumed by the State. Fuller was

---

*Richard S. Buckley, Marshall J. Hartman,* and *Wilbur F. Littlefield* filed a brief for the National Legal Aid and Defender Assn. as *amicus curiae* urging reversal.

[1] Other charges contained in the information against Fuller were dismissed when his guilty plea was accepted.

subsequently sentenced to five years of probation, conditioned upon his satisfactorily complying with the requirements of a work-release program at the county jail that would permit him to attend college, and also upon his reimbursement to the county of the fees and expenses of the attorney and investigator whose services had been provided him because of his indigent status. On appeal to the Oregon Court of Appeals, his principal contention was that the State could not constitutionally condition his probation on the repayment of these expenses.[2] With one judge dissenting, the imposition of his sentence was affirmed, 12 Ore. App. 152, 504 P. 2d 1393, and the Supreme Court of Oregon subsequently denied Fuller's petition for review. Because of the importance of the question presented and the conflict of opinion on the constitutional issue involved,[3] we granted certiorari, 414 U. S. 1111.

---

[2] In addition, Fuller argued that the section of the Oregon recoupment statute authorizing an obligation to repay "expenses specially incurred by the state in prosecuting the defendant," Ore. Rev. Stat. § 161.665 (2), see n. 5, infra, was not intended by the state legislature to include counsel fees. This issue of state law was resolved against the petitioner in the state court, and properly is not raised here. Murdock v. City of Memphis, 20 Wall. 590.

[3] Courts of some other States, in reviewing legislation similar to that in question here, have expressed views on the constitutionality of the recoupment of defense costs inconsistent with the decision of the Oregon Court of Appeals in this case. In re Allen, 71 Cal. 2d 388, 455 P. 2d 143; Opinion of the Justices, 109 N. H. 508, 256 A. 2d 500; State ex rel. Brundage v. Eide, 83 Wash. 2d 676, 521 P. 2d 706. Cf. Strange v. James, 323 F. Supp. 1230 (Kan.), aff'd on other grounds, 407 U. S. 128. See generally American Bar Association Project on Standards for Criminal Justice, Providing Defense Services § 6.4, pp. 58–59 (Approved Draft 1968); Comment, Reimbursement of Defense Costs as a Condition of Probation for Indigents, 67 Mich. L. Rev. 1404 (1969); Comment, Charging Costs of Prosecution to the Defendant, 59 Geo. L. J. 991 (1971).

## I

We begin with consideration of the plan and operation of the challenged statute. By force of interpretation of the State's Constitution and comprehensive legislation, Oregon mandates that every defendant in a criminal case must be assigned a lawyer at state expense if "[i]t appears to the court that the defendant is without means and is unable to obtain counsel." Ore. Rev. Stat. § 135.-050 (1)(d) (1973).[4] As part of a recoupment statute passed in 1971, Oregon requires that in some cases all or part of the "expenses specially incurred by the state in prosecuting the defendant," § 161.665 (2), be repaid to the State, and that when a convicted person is placed on probation repayment of such expenses may be made a condition of probation.[5] These expenses include the costs of the convicted person's legal defense.[6]

---

[4] Ore. Rev. Stat. § 135.050 (3)(a) (1973) directs that counsel be appointed for an indigent defendant when he is "[c]harged with a crime."

[5] Ore. Rev. Stat. § 161.665 provides:

"(1) The court may require a convicted defendant to pay costs.

"(2) Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant. They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law.

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

"(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will

As the Oregon appellate court noted in its opinion in this case, however, the requirement of repayment "is never mandatory." 12 Ore. App., at 156, 504 P. 2d,

---

impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under ORS 161.675."

Ore. Rev. Stat. § 161.675 provides:

"(1) When a defendant is sentenced to pay a fine or costs, the court may grant permission for payment to be made within a specified period of time or in specified instalments. If no such permission is included in the sentence the fine shall be payable forthwith.

"(2) When a defendant sentenced to pay a fine or costs is also placed on probation or imposition or execution of sentence is suspended, the court may make payment of the fine or costs a condition of probation or suspension of sentence."

Ore. Rev. Stat. § 161.685 provides:

"(1) When a defendant sentenced to pay a fine defaults in the payment thereof or of any instalment, the court on motion of the district attorney or upon its own motion may require him to show cause why his default should not be treated as contempt of court, and may issue a show cause citation or a warrant of arrest for his appearance.

"(2) Unless the defendant shows that his default was not attributable to an intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment, the court may find that his default constitutes contempt and may order him committed until the fine, or a specified part thereof, is paid.

"(3) When a fine is imposed on a corporation or unincorporated association, it is the duty of the person authorized to make disbursement from the assets of the corporation or association to pay the fine from those assets, and his failure to do so may be held to be contempt unless he makes the showing required in subsection (2) of this section.

"(4) The term of imprisonment for contempt for nonpayment of fines shall be set forth in the commitment order, and shall not exceed one day for each $25 of the fine, 30 days if the fine was imposed upon conviction of a violation or misdemeanor, or one year in any other case, whichever is the shorter period. A person committed for non-

at 1395. Rather, several conditions must be satisfied before a person may be required to repay the costs of his legal defense. First, a requirement of repayment may be imposed only upon a *convicted* defendant; those who are acquitted, whose trials end in mistrial or dismissal, and those whose convictions are overturned upon appeal face no possibility of being required to pay. Ore. Rev. Stat. § 161.665 (1). Second, a court may not order a convicted person to pay these expenses unless he "is or will be able to pay them." § 161.665 (3). The sentencing court must "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." *Ibid.* As the Oregon court put the matter in this case, no requirement to repay may be imposed if it appears at the time of sentencing that "there is no likelihood that a defendant's indigency will end . . . ." 12 Ore. App., at 159, 504 P. 2d, at 1397. Third, a convicted person under an obligation to repay "may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof." Ore. Rev. Stat. § 161.665 (4). The court is empowered to remit if payment "will impose manifest hardship on the defendant or his imme-

---

payment of a fine shall be given credit toward payment for each day of imprisonment at the rate specified in the commitment order.

"(5) If it appears to the satisfaction of the court that the default in the payment of a fine is not contempt, the court may enter an order allowing the defendant additional time for payment, reducing the amount thereof or of each instalment or revoking the fine or the unpaid portion thereof in whole or in part.

"(6) A default in the payment of a fine or costs or any instalment thereof may be collected by any means authorized by law for the enforcement of a judgment. The levy of execution for the collection of a fine shall not discharge a defendant committed to imprisonment for contempt until the amount of the fine has actually been collected."

[6] See n. 2, *supra.*

diate family . . . ." *Ibid.* Finally, no convicted person may be held in contempt for failure to repay if he shows that "his default was not attributable to an intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment . . . ." § 161.685 (2).

Thus, the recoupment statute is quite clearly directed only at those convicted defendants who are indigent at the time of the criminal proceedings against them but who subsequently gain the ability to pay the expenses of legal representation. Defendants with no likelihood of having the means to repay are not put under even a conditional obligation to do so, and those upon whom a conditional obligation is imposed are not subjected to collection procedures until their indigency has ended and no "manifest hardship" will result. The contrast with appointment-of-counsel procedures in States without recoupment requirements [2] is thus relatively small: a lawyer is provided at the expense of the State to all defendants who are unable, even momentarily, to hire one, and the obligation to repay the State accrues only to those who later acquire the means to do so without hardship.

## II

The petitioner's first contention is that Oregon's recoupment system violates the Equal Protection Clause of the Fourteenth Amendment because of various classifications explicitly or implicitly drawn by the legislative provisions. He calls attention to our decision in *James v. Strange,* 407 U. S. 128, which held invalid under the Equal Protection Clause a law enacted by Kansas that

---

[7] The recoupment provisions of other States are set out in the Court's opinion in *James v. Strange,* 407 U. S. 128, 132–133, and n. 8. The federal reimbursement provision is found in 18 U. S. C. § 3006A (f).

was somewhat similar to the legislation now before us. But the offending aspect of the Kansas statute was its provision that in an action to compel repayment of counsel fees "[n]one of the exemptions provided for in the code of civil procedure [for collection of other judgment debts] shall apply to any such judgment . . . ," Kan. Stat. Ann. § 22–4513 (a) (Supp. 1971), a provision which "strip[ped] from indigent defendants the array of protective exemptions Kansas has erected for other civil judgment debtors . . . ." 407 U. S., at 135.[8] The Court found that the elimination of the exemptions normally available to judgment debtors "embodie[d] elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law." *Id.*, at 142.

The Oregon statute under consideration here suffers from no such infirmity. As the Oregon Court of Appeals observed, "[n]o denial of the exemptions from execution afforded to other judgment debtors is included in the Oregon statutes." 12 Ore. App., at 159, 504 P. 2d, at 1397. Indeed, a separate provision directs that "[a] judgment that the defendant pay money, either as a fine or as costs and disbursements of the action, or both, shall be docketed as a judgment in a civil action and with like effect . . . ." Ore. Rev. Stat. § 137.180. The convicted person from whom recoupment is sought thus retains all the exemptions accorded other judgment debtors, in addition to the opportunity to show at any time that recovery of the costs of his legal defense will impose "manifest hardship," § 161.665 (4). The legislation before us,

---

[8] The Kansas statute allowed only one exception from the blanket denial of exemptions usually available to judgment debtors, permitting debtors upon whom judgments for costs of legal defense were executed to maintain their homesteads intact. 407 U. S., at 135.

therefore, is wholly free of the kind of discrimination that was held in *James* v. *Strange* to violate the Equal Protection Clause.[9]

The petitioner contends further, however, that the Oregon statute denies equal protection of the laws in another way—by discriminating between defendants who

---

[9] The dissenting opinion today argues that Fuller's conditional obligation to repay constitutes an impermissible discrimination based on wealth in violation of the Equal Protection Clause. More precisely, the argument is made that, unlike a nonindigent defendant, an indigent defendant's "failure to pay his debt can result in his being sent to prison." *Post*, at 60. This contention was not made in the petitioner's brief or oral argument before this Court, and appears not to have been raised in the Oregon courts. It is, therefore, not properly before us. See n. 11, *infra.* Furthermore, insofar as the dissent deals with Art. 1, § 19, of the Oregon Constitution which forbids "imprisonment for debt," the dissent purports to resolve questions of state law that this Court does not have power to decide. *Murdock* v. *City of Memphis*, 20 Wall. 590.

More fundamentally, the imposition of a repayment requirement upon those for whom counsel was appointed but not upon those who hired their own counsel simply does not constitute invidious discrimination against the poor. Indeed, the entire thrust of Oregon's appointment-of-counsel plan is to insure an indigent effective representation of counsel at all significant steps of the criminal process. Those who are indigent may be conditionally required to repay because only they, in contrast to nonindigents, were provided counsel by the State in the first place. Moreover, the fact that a conditional requirement to repay may be made a condition of probation does not mean that the State "impose[s] unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor." *James* v. *Strange,* 407 U. S., at 138. Under Oregon's recoupment statute revocation of probation is not a collection device used by the State to enforce debts to it, but is a sanction imposed for "an intentional refusal to obey the order of the court," Ore. Rev. Stat. § 161.685 (2). Since an order to repay can be entered only when a convicted person is financially able but unwilling to reimburse the State, the constitutional invalidity found in *James* v. *Strange* simply does not exist.

are convicted, on the one hand, and those who are not convicted or whose convictions are reversed, on the other. Our review of this distinction, of course, is a limited one. As the Court stated in *James* v. *Strange:* "We do not inquire whether this statute is wise or desirable . . . . Misguided laws may nonetheless be constitutional." 407 U. S., at 133. Our task is merely to determine whether there is "some rationality in the nature of the class singled out." *Rinaldi* v. *Yeager,* 384 U. S. 305, 308–309. See also *McGinnis* v. *Royster,* 410 U. S. 263; *McGowan* v. *Maryland,* 366 U. S. 420. In *Rinaldi* the Court found impermissible New Jersey's decision to single out prisoners confined to state institutions for imposition of an obligation to repay to the State costs incurred in providing free transcripts of trial court proceedings required by this Court's decision in *Griffin* v. *Illinois,* 351 U. S. 12. The legislative decision to tax those confined to prison but not those also convicted but given a suspended sentence, probation, or a fine without imprisonment was found to be invidiously discriminatory and thus violative of the requirements of the Equal Protection Clause. In the case before us, however, the sole distinction is between those who are ultimately convicted and those who are not.[10]

We conclude that this classification is wholly non-invidious. A defendant whose trial ends without con-

---

[10] The petitioner also claims in his brief that a requirement to repay legal defense expenses has been imposed only on convicted defendants placed on probation, and "has not been applied to those convicted indigents who were sentenced to terms of imprisonment." While this distinction might well be justified on the ground that those released on probation are more likely than those incarcerated to have the ability to earn money to repay, we need not reach this issue since the statute itself makes no such distinction, and the petitioner has not demonstrated on this record that the State has engaged in any pattern or practice embracing it.

viction or whose conviction is overturned on appeal has been seriously imposed upon by society without any conclusive demonstration that he is criminally culpable. His life has been interrupted and subjected to great stress, and he may have incurred financial hardship through loss of job or potential working hours. His reputation may have been greatly damaged. The imposition of such dislocations and hardships without an ultimate conviction is, of course, unavoidable in a legal system that requires proof of guilt beyond a reasonable doubt and guarantees important procedural protections to every defendant in a criminal trial. But Oregon could surely decide with objective rationality that when a defendant has been forced to submit to a criminal prosecution that does not end in conviction, he will be freed of any potential liability to reimburse the State for the costs of his defense. This legislative decision reflects no more than an effort to achieve elemental fairness and is a far cry from the kind of invidious discrimination that the Equal Protection Clause condemns.[11]

---

[11] The petitioner's brief also raises, without extended discussion, various due process claims that imposition of the conditional obligation to repay was made without sufficient notice or hearing. Since these contentions appear not to have been raised in the state courts, and were not discussed by the Oregon Court of Appeals, we need not reach them here. "[T]his Court has stated that when . . . the highest state court has failed to pass upon a federal question, it will be assumed that the omission was due to want of proper presentation in the state courts, unless the aggrieved party in this Court can affirmatively show the contrary." *Street* v. *New York,* 394 U. S. 576, 582. We note in passing, however, that the recoupment statutes, including a schedule of fees, were published in the Oregon Revised Statutes at the time of the petitioner's plea, and further that both Oregon's judgment execution statute and its parole revocation procedures provide for a hearing before execution can be levied or probation revoked.

## III

The petitioner's second basic contention is that Oregon's recoupment statute infringes upon his constitutional right to have counsel provided by the State when he is unable because of indigency to hire a lawyer. *Gideon* v. *Wainwright,* 372 U. S. 335; *Argersinger* v. *Hamlin,* 407 U. S. 25. The argument is not that the legal representation actually provided in this case was ineffective or insufficient. Nor does the petitioner claim that the fees and expenses he may have to repay constitute unreasonable compensation for the defense provided him. Rather, he asserts that a defendant's knowledge that he may remain under an obligation to repay the expenses incurred in providing him legal representation might impel him to decline the services of an appointed attorney and thus "chill" his constitutional right to counsel.

This view was articulated by the Supreme Court of California, in a case invalidating California's recoupment legislation, in the following terms:

"[W]e believe that as knowledge of [the recoupment] practice has grown and continues to grow many indigent defendants will come to realize that the judge's offer to supply counsel is not the gratuitous offer of assistance that it might appear to be; that, in the event the case results in a grant of probation, one of the conditions might well be the reimbursement of the county for the expense involved. This knowledge is quite likely to deter or discourage many defendants from accepting the offer of counsel despite the gravity of the need for such representation as emphasized by the [Supreme] [C]ourt in *Gideon* . . . ." *In re Allen,* 71 Cal. 2d 388, 391, 455 P. 2d 143, 144.

We have concluded that this reasoning is wide of the constitutional mark.

The focal point of this Court's decisions securing the right to state-appointed counsel for indigents was the "noble ideal" that every criminal defendant be guaranteed not only "procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law," but also the expert advice necessary to recognize and take advantage of those safeguards. *Gideon* v. *Wainwright, supra,* at 344. In the now familiar words of the Court's seminal opinion in *Powell* v. *Alabama,* 287 U. S. 45, 68–69, quoted in *Gideon,* at 344–345:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

Oregon's system for providing counsel quite clearly does not deprive any defendant of the legal assistance necessary to meet these needs. As the State Court of Appeals observed in this case, an indigent is entitled to

free counsel "when he needs it"—that is, during every stage of the criminal proceedings against him. 12 Ore. App., at 158–159, 504 P. 2d, at 1396. The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel. The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so.[12] Those who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay.

We live in a society where the distribution of legal assistance, like the distribution of all goods and services, is generally regulated by the dynamics of private enterprise. A defendant in a criminal case who is just above the line separating the indigent from the nonindigent must borrow money, sell off his meager assets, or call upon his family or friends in order to hire a lawyer. We cannot say that the Constitution requires that those only slightly poorer must remain forever immune from any

---

[12] The limitation of the obligation to repay to those who are found able to do so also disposes of the argument, presented by an *amicus curiae*, that revocation of probation for failure to pay constitutes an impermissible discrimination based on wealth. See *Tate* v. *Short,* 401 U. S. 395; *Williams* v. *Illinois,* 399 U. S. 235. As the Court stated in *Tate* v. *Short:* "We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so." 401 U. S., at 400.

Similarly, the wording of Oregon's statute makes it clear that a determination that an indigent "will be able" to make subsequent repayment is a condition necessary for the initial imposition of the obligation to make repayment, but is not itself a condition for granting probation, or even a factor to be considered in determining whether probation should be granted.

obligation to shoulder the expenses of their legal defense, even when they are able to pay without hardship.

This case is fundamentally different from our decisions relied on by the petitioner which have invalidated state and federal laws that placed a penalty on the exercise of a constitutional right. See *Uniformed Sanitation Men* v. *Sanitation Comm'r,* 392 U. S. 280; *Gardner* v. *Broderick,* 392 U. S. 273; *United States* v. *Jackson,* 390 U. S. 570. Unlike the statutes found invalid in those cases, where the provisions "had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them," *id.,* at 581, Oregon's recoupment statute merely provides that a convicted person who later becomes able to pay for his counsel may be required to do so. Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship.

The judgment of the Court of Appeals of Oregon is affirmed.

*It is so ordered.*

MR. JUSTICE DOUGLAS, concurring in the judgment.

The petitioner in this case, charged with a felony, received court-appointed counsel, which is available in Oregon to a defendant who executes a statement that he is unable to obtain counsel, when it appears to the court that the defendant is without means. Ore. Rev. Stat. §§ 135.050 (1)(c), (d) (1973). Petitioner was convicted, and sentenced to five years' probation. One of the conditions of probation was that petitioner reimburse the county for the cost of his appointed attorney's fees and for the expenses of a defense investigator.[1] These costs were

---

[1] In this case, the petitioner's father apparently paid the costs, and petitioner will repay his father.

assessed pursuant to the Oregon recoupment statute, §§ 161.665–161.685, which authorizes the sentencing court to require a convicted defendant to pay certain costs [2] and to condition probation on such payment.

Although a defendant might have been indigent at the time of trial, the Oregon statutory scheme recognizes that at some point after trial a defendant may escape from indigency. As noted, the recoupment statute thus allows the court to require a convicted defendant to pay costs. § 161.665 (1). Payment of the costs may be made a condition of probation. § 161.675 (2). But it forbids the court to impose such a requirement at the time of sentencing unless the defendant at that time "is or will be able to" pay those costs and requires the court to consider the "nature of the burden that payment of costs will impose" on the defendant. § 161.665 (3). Under the statute, a court which has sentenced a defendant to pay costs may remit the payment of the amount due, or modify the method of payment, if it appears that the payment will impose manifest hardship on the defendant or his immediate family. § 161.665 (4).

---

[2] The costs which can be assessed are limited by statute to those "specially incurred" by the State in prosecuting a defendant. Ore. Rev. Stat. § 161.665 (2). The Oregon Court of Appeals found that most costs on the prosecution side of the case could not be charged to a defendant, including police investigations, district attorneys' salaries, and sheriffs' salaries. 12 Ore. App. 152, 157, 504 P. 2d 1393, 1396. Also, jury fees and the costs of summoning jurors cannot be charged to the defendant. *Ibid.;* see Ore. Rev. Stat. § 161.665 (2). The costs which can be charged appear limited to those incurred for a defendant's benefit, such as defense counsel, defense investigators, and so on, which would be borne by a nonindigent defendant in a criminal trial. In addition, the Oregon statutory scheme places limits on the fees which an appointed counsel can receive, except in "extraordinary circumstances," thus limiting the eventual responsibility of a defendant under the recoupment statute. § 135.055.

The Court of Appeals of Oregon construed the statutory scheme in this case to limit sharply the discretion of the trial court to require the repayment of costs. 12 Ore. App. 152, 504 P. 2d 1393. As the court interpreted the statute, a defendant can be required to repay appointed counsel's fee *"only if and when he is no longer indigent."* *Id.,* at 159, 504 P. 2d, at 1397 (emphasis added). While payment of costs may be made a condition of probation, probation can be revoked only if the court specifically finds that "(1) the defendant has the present financial ability to repay the costs involved (either all or by installments) without hardship to himself or his family . . . *and* (2) the defendant's failure to repay . . . is an intentional, contumacious default . . . ." *Ibid.* Revocation is improper if both of these elements are not established.

The narrow construction of the Oregon recoupment statute in this case disposes of petitioner's claim that the statute "chills" the exercise of the right to counsel. Repayment cannot be required until a defendant is able to pay the costs, and probation cannot be revoked for nonpayment unless there is a specific finding that payment would not work hardship on a defendant or his family. Under these circumstances, the "chill" on the exercise of the right to counsel is no greater than that imposed on a nonindigent defendant without great sums of money. Even though such a defendant can afford counsel, he might well be more ready to accept free appointed counsel than to retain counsel himself. Yet a State is not therefore required by the Federal Constitution to provide appointed counsel for nonindigent defendants.[3]

---

[3] Indeed, while a defendant who is not indigent at the time of trial must pay counsel fees even if acquitted, the Oregon recoup-

Nor is it a denial of equal protection to assess costs only against those defendants who are convicted. The acquitted defendant has prevailed at trial in defending against the charge brought by the State. It is rational that the State not recover costs from such a defendant while recovering costs from a defendant who has been found guilty beyond a reasonable doubt of the crime that necessitated the trial. Similarly, too, it is rational not to assess defendants against whom charges have been dismissed, since the State has not proved its charges against them.[4]

My Brother MARSHALL argues that the Oregon recoupment statute denies indigent defendants equal protection of the laws in that it contemplates revocation of probation and subsequent imprisonment for nonpayment of counsel fees. He notes that Art. 1, § 19, of the Oregon Constitution provides that "[t]here shall be no imprisonment for debt, except in case of fraud or absconding debtors," and argues that a defendant who failed to pay a bill to his retained counsel could not be imprisoned.

I do not believe that this claim was properly preserved below or is properly before this Court. Petitioner did argue that the possibility of imprisonment for debts owed the State under the recoupment statute denied him equal protection, but there is no indication that the Oregon Court of Appeals was alerted to the problems

ment statutes do not permit the assessment of costs against a defendant who is not convicted.

[4] Petitioner, relying on *James* v. *Strange,* 407 U. S. 128, also claims that the recoupment statute is impermissible because it fails to provide the same exemptions from execution provided other Oregon debtors. The Oregon Court of Appeals in this case held that all exemptions provided other debtors also apply under the recoupment statute. 12 Ore. App., at 159, 504 P. 2d, at 1397. Petitioner's claim that the statute deprives him of due process was not raised below and hence is not before this Court.

posed by Art. 1, § 19. Petitioner did not even mention the section in his brief before this Court.[5] Yet there is, as my Brother MARSHALL notes, an apparent inconsistency between Art. 1, § 19, and the recoupment statute. It may be, therefore, that the Oregon courts would strike down the statute as being inconsistent with the constitutional provision if they faced the issue. But on the record of this case, they have not made that determination of state law. Nor can we assume that the Oregon courts have in fact implicitly rejected the applicability of Art. 1, § 19, in upholding the recoupment statute in this case; there is no evidence that an Oregon court must, or even may, *sua sponte,* consider arguments not argued or briefed to it.

While this Court may at times adopt theories different from those urged by counsel or urged before the state courts when resolving a particular question, see *Dewey* v. *Des Moines,* 173 U. S. 193, 198; cf. *Stanley* v. *Illinois,* 405 U. S. 645, 658 n. 10, it will not pass on questions substantively different from those presented to the state courts, even when the federal claim is nominally based on the same federal constitutional clause relied on before the state courts, see *Wilson* v. *Cook,* 327 U. S. 474, 483–484. More crucially, the federal Equal Protection Clause could be violated in this case only if a particular construction of state law were to be adopted by the state

---

[5] The opinion of the Oregon Court of Appeals, including the dissent, does not mention Art. 1, § 19. Petitioner's equal protection argument here was based on claims that the recoupment statute did not provide the same statutory exemptions granted other Oregon debtors, discriminated against convicted defendants as opposed to acquitted defendants and defendants who had charges dismissed, and favored defendants who were sentenced to the penitentiary. The Art. 1, § 19, problem was brought to the attention of the Court only by the *amicus curiae* brief of the National Legal Aid and Defender Association.

courts. That construction was not adopted on the record before us, and we cannot simply assume that the state court would so rule and strike down the state statute on the basis of that assumption.

For these reasons, I do not reach the merits of the equal protection question presented by the dissent. And since that question is not properly before us, I believe that the Court errs in rendering an advisory opinion on the merits, an error compounded by the absence of any record below amplifying those merits. The Court not only renders an advisory opinion; it renders it in a vacuum. The proper construction of state law, and the proper resolution of the dependent equal protection claim, would properly be raised by another litigant or by petitioner by way of collateral attack.

In view of the manner in which the application of the recoupment statute has been stringently narrowed by the Court of Appeals of Oregon and because the claim urged by the dissent is not properly before the Court, I concur in the judgment of the Court.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

In my view, the Oregon recoupment statute at issue in this case discriminates against indigent defendants in violation of the Equal Protection Clause and the principles established by this Court in *James* v. *Strange,* 407 U. S. 128 (1972). In that case we held unconstitutional under the Equal Protection Clause a Kansas recoupment statute because it failed to provide equal treatment between indigent defendants and other civil judgment debtors. We relied on the fact that indigent defendants were not entitled to the protective exemptions Kansas had erected for other civil judgment debtors.

The Oregon recoupment statute at issue here similarly provides unequal treatment between indigent defendants

and other civil judgment debtors. The majority obfuscates the issue in this case by focusing solely on the question whether the Oregon statute affords an indigent defendant the same protective exemptions provided other civil debtors. True, as construed by the Oregon Court of Appeals, the statute does not discriminate in this regard. But the treatment it affords indigent defendants remains unequal in another, even more fundamental, respect. The important fact which the majority ignores is that under Oregon law, the repayment of the indigent defendant's debt to the State can be made a condition of his probation, as it was in this case. Petitioner's failure to pay his debt can result in his being sent to prison. In this respect the indigent defendant in Oregon, like the indigent defendant in *James* v. *Strange,* is treated quite differently from other civil judgment debtors.

Petitioner's "predicament under this statute comes into sharper focus when compared with that of one who has hired counsel in his defense." 407 U. S., at 136. Article 1, § 19, of the Oregon Constitution provides that "[t]here shall be no imprisonment for debt, except in case of fraud or absconding debtors." Hence, the nonindigent defendant in a criminal case in Oregon who does not pay his privately retained counsel, even after he obtains the means to do so, cannot be imprisoned for such failure. The lawyer in that instance must enforce his judgment through the normal routes available to a creditor—by attachment, lien, garnishment, or the like. Petitioner, on the other hand, faces five years behind bars if he fails to pay his "debt" arising out of the appointment of counsel.

Article 1, § 19, of the Oregon Constitution is representative of a fundamental state policy consistent with the modern rejection of the practice of imprisonment for debt as unnecessarily cruel and essentially counterproductive.

Since Oregon chooses not to provide imprisonment for debt for well-heeled defendants who do not pay their retained counsel, I do not believe it can, consistent with the Equal Protection Clause, imprison an indigent defendant for his failure to pay the costs of his appointed counsel.[1] For as we held in *James* v. *Strange,* a State may not "impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor." 407 U. S., at 138.

I would therefore hold the Oregon recoupment statute unconstitutional under the Equal Protection Clause insofar as it permits payment of the indigent defendant's debt to be made a condition of his probation.[2] I respectfully dissent.

---

[1] The majority argues that we have recognized no constitutional infirmity in imprisoning a defendant with the means to pay a fine who refuses or neglects to do so. *Ante,* at 53 n. 12. This case does not involve a fine, however, but rather enforcement of a debt for legal services. The fact remains that Oregon imprisons a defendant with appointed counsel who refuses or neglects to pay his debt for legal services even though able to pay, but does not imprison a defendant with retained counsel in the same circumstances.

[2] In light of my disposition of the equal protection claim, I have no occasion to consider petitioner's contention that some other defendant's knowledge that he may have to reimburse the State for providing him legal representation might impel him to decline the services of an appointed attorney and thus chill his Sixth Amendment right to counsel. In any event, in my view such a claim could more appropriately be considered by this Court in the context of an actual case involving a defendant who, unlike petitioner, had refused appointed counsel and contended that his refusal was not a knowing and voluntary waiver of his Sixth Amendment rights because it was based upon his fear of bearing the burden of a debt for appointed counsel or upon his failure to understand the limitations the State imposes on such a debt.