M., ON BEHALF OF T., A MINOR, PLAINTIFF, v.
S., DEFENDANT.

Superior Court of New Jersey
Law Division

Decided June 6, 1979.

212

214

*Mr. Ivam Sherman* for appellant County of Cumberland (*Messrs. Davidow, Sherman & Eddowes,* attorneys).

*Mr. Robert E. Bailey* for respondent Cumberland County Welfare Board ,(*Messrs. Bailey & Veight,* attorneys).

*Mr. Rocco Tedesco* for defendants. (*Messrs. Greenblatt & Greenblatt,* attorneys).

PORRECA, J. S. C. This is an interlocutory appeal from an order of the Juvenile and Domestic Relations Court in a bastardy proceeding. An order was entered that all pretrial and trial expenses, judicially determined to be necessary, would be reimbursed by the county to assigned defense counsel, provided the application for payment was on notice to the county treasurer.

Appellant County of Cumberland raises several procedural questions:

1. Whether the initial finding of indigency for purposes of assignment of counsel is a final determination of indigency and governs necessary expenses as well.

2. Whether an indigent defendant can be compelled to make reimbursement for legal expenses in the event that his indigent status ends.

3. The extent of discovery into defendant's finances prior to any determination of indigency.

4. Whether this court can order the county welfare board to pay for pretrial and trial expenses.

The uncontroverted facts in this case are that on December 7, 1977 plaintiff commenced an action in the Cumberland County Juvenile and Domestic Relations Court on complaint for judgment of paternity against defendant. On the same day application was made for Aid to Families with Dependent Children (AFDC). The child was born on January 1, 1978. The AFDC payments began in January 1978 in the amount of $247 a month.

The Juvenile and Domestic Relations Court found defendant indigent. Counsel was assigned to represent defendant, Blood tests were ordered, with the cost to be borne by the county. The present interlocutory appeal resulted from that order.

The determination by a court that defendant is indigent for purposes of assignment of counsel is final and applies with equal force to the payment of necessary expenses. Any reopening of the finding of indigency would inevitably interrupt the continuity of the proceedings. Therefore, such a practice should be avoided, if possible to do so without a result that is inequitable to the *pro bono* attorney and the taxpaying public. This case is a good illustration of the multiplicity of applications that could arise if the determination of indigency were not final. This defendant is seasonably employed and during the short course of this litigation has been employed and unemployed on at least three occasions.

The only remaining issue, after a finding of indigency, is the determination whether the requested expenses are necessary. The answer to any latter affluence of defendant is reimbursement of the costs by defendant, not a redetermination of indigency at every request for necessary expenses.

The court below found defendant indigent for purposes of assignment of counsel *and* with respect to the costs of blood testing and related expenses. Bastardy proceedings are at least *quasi*-criminal in nature. *Smith v. Walker*, 138 *N. J. Super.* 187, 194–195 (Cty. Ct. 1975). A paternity action can result in consequences of magnitude. *Id.* at 195; *Lurry v. Mills*, 152 *N. J. Super.* 127 (Cty. Ct. 1977). Therefore, in bastardy proceedings an indigent defendant must be assigned counsel without cost. *Rodriguez v. Rosenblatt*, 58 *N. J.* 281, 295 (1971). The right to assigned counsel includes as well that which is necessary to a proper defense such as experts, medical examinations and scientific tests. *State v. Horton*, 34 *N. J.* 518, 534 (1961). The court has the inherent power to order these costs to be provided at public expense. *Id.* Blood-grouping tests and related expenses are necessary to a proper defense. *Lurry v. Mills, supra*, 152 *N. J. Super.* at 131; *Smith v. Walker, supra*, 138 *N. J. Super.* at 195–196.

The blood tests were properly ordered by the trial judge at public expense. The judge also ordered that the parties undergo Human Leucocyte Antigen (HLA) testing. HLA testing represents the state of the art in blood testing for determining paternity. *Malvasi v. Malvasi*, 167 *N. J. Super.* 513 (Ch. Div. 1979). Such testing appears to be appropriate in this case. Therefore, the parties will undergo HLA testing at public expense.

The next issue facing the court is whether, in the absence of statutory provision, the court can judicially impose a reimbursement obligation on defendant for the cost of the defense, in the event that defendant's indigency ends.

 The court has the inherent power to order reimbursement by defendant. Further authority for requiring reimbursement is found in *R.* 5:5–9(d) which provides in pertinent part:

\* \* \* In the order of filiation the court shall fix the reasonable expenses of apprehending the father and of the cost of the proceeding for which he shall be liable.

The language of the rule is broad enough to allow the court to order the blood tests and related expenses to be reimbursed by defendant as being part of the cost of the proceeding. Therefore; the public entity bearing the costs of the defense may make a timely application for reimbursement of such costs.

 Although defendant neither signed a reimbursement agreement prior to the testing nor was informed of the possibility of reimbursement, this does not prevent the court from imposing a reimbursement obligation, subject to the procedural safeguards set forth below.

 Only those defendants who actually become capable of repaying the costs will be obligated to do so. Those defendants who remain indigent or for whom repayment would cause a manifest hardship are exempt from the obligation to repay. *Fuller v. Oregon,* 417 *U. S.* 40, 53, 94 *S. Ct.* 2116, 2124, 40 *L. Ed.* 2d 642 (1974).

 The requirement that a defendant be obligated to reimburse such expenses does not infringe upon the constitutional right to counsel. In *Fuller v. Oregon* the court held that defendant's knowledge that he may remain under an obligation to repay the expenses incurred in providing him legal representation does not "chill" his right to counsel. The court emphasized that "[t]he fact that an indigent who accepts appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel." *Id.* at 52, 94 *S. Ct.* at 2124. Furthermore, requiring

reimbursement does not place a penalty on the exercise of this constitutional right since its purpose is not to "chill" the assertion of constitutional rights by penalizing those who choose to use them. *Id.* at 54, 94 *S. Ct.* at 2125; *Stroinski v. Office of Public Defender,* 134 *N. J. Super.* 21, 38 (App. Div. 1975).

▆▆▆▆ Such reimbursement must, however, be subject to the following procedural safeguards. The reimbursement debt must be subject to the same protective exemptions available to other civil judgment debtors. *James v. Strange,* 407 *U. S.* 128, 92 *S. Ct.* 2027, 32 *L. Ed.* 2d 600 (1972). Defendant must have access to the institution of proceedings to contest the value of the services rendered. *Stroinski, supra,* 134 *N. J. Super.* at 35. Defendant may seek a determination by the court that reimbursement would create a "manifest financial hardship," requiring the court to vacate or reduce the debt to an amount defendant can reasonably be expected to pay. *Id.* at 36.

▆▆▆ Extended discovery into defendant's financial condition will not be permitted. Such discovery, if permitted, would inevitably lead to delays and would create an intolerable burden on assigned counsel. Pretrial delays should be avoided by the use of a method which will provide sufficient information without causing further delay. *In re Guardianship of Dotson,* 72 *N. J.* 112, 116 (1976). The completion of a form patterned after the Public Defender's "5A" form and under oath should suffice. Such a form will satisfy the requirements of due process. Since the form is administered under oath, if defendant falsifies his answers, he is liable to criminal sanctions for false swearing. Therefore, in all cases where a party seeks assigned counsel, he will be required to complete under oath a form patterned after the 5A form now in use by the public defender.

The trial judge, relying on *Smith v. Walker, supra,* held the county was liable for the pretrial and trial expenses of the indigent defendant. This result was based on two findings: (1) that there is no nexus between the party litigants and

the Cumberland County Welfare Board and (2) the doctrine of separation of powers prevents the court from ordering the county welfare board to pay for the expenses since the board received a majority of its budget from federal and state funds.

The court does have the power to order the county to pay trial expenses in an appropriate case. *State v. Horton, supra.* The county welfare board is an entity created by the county. *N. J. S. A.* 44:1–10. The county welfare board is composed of members appointed by the county board of chosen freeholders. *N. J. S. A.* 44:1–11.

■ A creation of the county is vested with no greater sovereignty than its creator. It follows, therefore, that if the court can order the county to pay, it can exert the same authority over a legislative creation of the county. *Lurry v. Mills, supra,* 152 *N. J. Super.* at 131. The fact that the welfare board receives funding from federal and state sources does not alter the fundamental character of the board. The county also receives state and federal aid. Furthermore, that a majority of the board's funding is derived from federal and state sources does not elevate the sovereignty of the board. The ratio of county, state and federal funding is irrelevant.

In *Smith v. Walker, supra,* the court, relying on *Crist v. Div. of Youth and Family Services,* 135 *N. J. Super.* 573 (App. Div. 1975), held that the county welfare board was entitled to budgetary immunity to such expenses in the absence of specific appropriation for such tests. The same argument exists in favor of the county and if accepted would enable any agency to avoid liability by not appropriating the money. In *Crist* the court relied on *Fitzgerald v. Palmer,* 47 *N. J.* 106 (1966) which stated:

* * * No money may be drawn from the state treasury but for appropriations made by law. Const., Art. VIII, § II, par. 2. The judiciary could not order the Legislature to appropriate money, or the governor to approve an appropriation if one were made. * * * [at 108]

The crucial distinction is that the court in *Crist* was faced with a state agency, whereas in the present case a county board is involved. That a portion of the board's funding is derived from federal and state funding is not controlling. The county also receives federal and state funding. Neither entity's sovereignty is affected by such funding. Sovereignty is based upon an entity's etiology not merely upon its funding.

The uncontroverted evidence establishes that there is a nexus between the party litigants and the county welfare board in this case. Plaintiff is receiving welfare assistance under AFDC program. The county welfare board required that plaintiff bring suit against the alleged father. Any support monies arising out of the paternity suit, if successful, are assigned to the welfare board. In fact, the real party in interest is the welfare board, which stands in the shoes of the mother and child in this litigation. Clearly there is a nexus between the parties and the county welfare board.

There being no impediment to ordering the county welfare board to pay for the expenses, and there being a nexus between the parties and the county welfare board, this court holds that the county welfare board shall be responsible for the trial and pretrial expenses that the trial court determines to be necessary.

In conclusion, defendants in paternity actions shall complete a form patterned after public defender's 5A form under oath, which shall be served on the county welfare board and assigned counsel in the event his indigent status shall be on notice to the county welfare board, and shall be final as to all aspects of the costs of the defense. There shall be no postponements granted for purposes of further discovery. Defendant can be compelled to reimburse the county welfare board and assigned counsel in the event his indigent status terminates in the future, provided that timely application is made.

Affirmed in part, reversed in part.