*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

RONALD WAYNE BLANK,

    Defendant-Appellant.

UNPUBLISHED
January 28, 2025
10:25 AM

No. 368474
Grand Traverse Circuit Court
LC No. 2022-014306-FH

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Defendant, Ronald Wayne Blank, appeals the trial court's decision to require him to pay $850 in attorney fees as a component of his sentence. Blank pleaded guilty to second-degree criminal sexual conduct (CSC-II) (sexual contact accomplished with an article reasonably perceived as a weapon), MCL 750.520c(1)(e), unlawful imprisonment, MCL 750.349b(1)(a) (person restrained by means of a dangerous instrument), and assault with a dangerous weapon, MCL 750.82(1). The trial court sentenced him to serve concurrent terms of 86 months to 15 years' imprisonment for his convictions of CSC-II and unlawful imprisonment, and 24 to 48 months' imprisonment for his conviction of assault with a dangerous weapon. It also ordered him to pay fees and costs, including $850 in attorney fees for his appointed counsel. The trial court denied Blank's postconviction request for an evidentiary hearing regarding whether he was indigent. He now appeals the court's decision by leave granted,[1] challenging the factual basis for the attorney-fee assessment and the denial of his request for an evidentiary hearing on indigency. Because the assessment and hearing denial were not erroneous, we affirm the trial court's assessment of $850 in attorney fees and its denial of Blank's request for an indigency hearing.

## I. BACKGROUND

---

[1] *People v Blank*, unpublished order of the Court of Appeals, entered December 21, 2023 (Docket No. 368474).

This case arises out of terms and conditions of Blank's sentence for convictions arising out of a sexual assault against his ex-wife. The underlying details of that assault do not impact this appeal, which centers on aspects of Blank's sentence and postconviction motions before the trial court. Critically, following Blank's guilty plea, the trial court sentenced him in March 2023 and ordered him to pay $204 in state costs ($68 per felony conviction), see MCL 769.1j(1)(a), $130 as a state crime victims' rights assessment, see MCL 780.905(1)(a), and $850 in "court costs" for the cost of his court-appointed attorney.[2] The state costs and crime victims' rights assessment are mandatory. The assessment for attorney fees is not. During the sentencing hearing, the trial court did not specify the basis for imposing $850 in attorney fees.

Following his sentencing, Blank filed a postconviction motion to waive the trial court's imposition of court-appointed attorney fees. He argued that the trial court did not explain how it reached the assessed amount and that it also failed to consider his ability to pay those fees, as required by the Michigan Indigent Defense Commission Act (MIDCA), MCL 780.981 *et seq.* As part of his argument, Blank cited a new standard proposed by the Michigan Indigent Defense Commission (MIDC) and adopted by the Michigan Department of Licensing and Regulatory Affairs (LARA). That standard provided that "a local funding unit" could not seek reimbursement for the services of an appointed attorney from a partially indigent defendant " 'if doing so would cause a substantial financial hardship.' " Blank also argued that—even if he was only partially indigent—under the standards of the MIDC, he would suffer substantial financial hardship from the imposition of the attorney fees because he would be unable to earn sufficient wages to pay those fees while in prison and after his release. Accordingly, Blank argued that he was entitled to resentencing or an evidentiary hearing to determine the question of indigency.

Following a hearing, the trial court denied Blank's motion. First, regarding Blank's argument about the standards under the MIDCA, the trial court concluded that it was not an "appointing authority" or "local funding unit" as defined by the MIDC standards, so those standards did not apply to its assessment of attorney fees. It further stated that it did not believe that the MIDCA "remov[ed] [the court's] ability to assign court appointed attorney fees" and that, if the MIDCA had done so, MCL 769.1k, "or at least the portion of it that deals with attorney fees[,]" would have been repealed.

Next, regarding the bases for the amounts it assessed for attorney fees at sentencing, the trial court stated that it had referred to an amount "up to $850 at sentencing" because the local defense bar did not submit their bills until after a case was closed. It further explained that on the blank court-appointed-attorney-fee form listing the minimum number of hearings for a criminal proceeding in Grand Traverse County and the form that Blank's trial counsel submitted, the fee amount exceeded $850. It then itemized the cost associated with each hearing, including: "the initial contact within three days" for $85; the "interview and investigation" for $375; the probable-cause conference, the "waived preliminary exam fee[,]" the pretrial conference, and the "final conference form" for $50 each; and the plea and sentencing hearings for $175 each. The court

---

[2] At sentencing, the trial court stated that Blank "would be expected to reimburse the county for up to $850 of [his appointed attorney's] services." But, the original judgment of sentence entered this amount as "court costs."

stated that it "asked the MIDC to provide a copy of the billing from [Blank's trial counsel]" and the "total request submitted [by trial counsel] for compensation was actually $1,010." Accordingly, the trial court concluded that the amount of $850 was "appropriate." It declined to assess a greater amount, instead affirming the $850 assessment.

At the hearing, the trial court denied Blank's request for an evidentiary hearing on indigency as premature. It explained that it does not try to collect court-appointed attorney fees immediately. The trial court then stated that it often does not make collection attempts until a defendant is released and that, "as long as somebody is making small monthly payments," the court accepted that instead of attempting to collect all the fees at once. The court found that an evidentiary hearing was unnecessary, but it also concluded that it would not raise the amount of the fee from $850 to $1,010. The trial court then entered an amended judgment of sentence to reflect that the assessment of $850 was for attorney fees and not court costs. This appeal followed.

## II. STANDARDS OF REVIEW

Whether a court has properly assessed attorney fees under MCL 769.1k(1)(b)(*iv*) and MCL 780.991(3) is a question of statutory interpretation and application that is reviewed de novo. See *People v Bruce*, 504 Mich 555, 562; 939 NW2d 188 (2019). "[F]indings of fact on which the trial court bases an award of attorney fees are reviewed for clear error." *Richards v Richards*, 310 Mich App 683, 700; 874 NW2d 704 (2015). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *People v Jarrell*, 344 Mich App 464, 474; 1 NW3d 359 (2022) (quotation marks and citation omitted). "We review de novo constitutional questions such as whether a party was denied due process and equal protection under the law." *Does 11-18 v Dep't of Corrections*, 323 Mich App 479, 485; 917 NW2d 730 (2018).

## III. FACTS SUPPORTING ATTORNEY-FEE AMOUNT

Blank first argues that the trial court's assessment of $850 in court-appointed attorney fees was a reversible error because it failed to provide a factual basis to support that amount. We disagree. Although the trial court failed to provide a basis for that amount at Blank's sentencing hearing, it made sufficient factual findings supporting the $850 assessment at the hearing on Blank's postconviction motion.

A state may constitutionally assess attorney fees for an indigent criminal defendant who may be able to pay them later. See *Fuller v Oregon*, 417 US 40, 54; 94 S Ct 2116; 40 L Ed 2d 642 (1974). Michigan statutorily authorizes a trial court to impose "[t]he expenses of providing legal assistance" on a defendant who has pleaded guilty. MCL 769.1k(1)(b)(*iv*). Moreover, MCR 6.005(C) provides that, "[i]f a defendant is able to pay part of the cost of a lawyer, the court may require contribution to the cost of providing a lawyer and may establish a plan for collecting the contribution." However, before assessing a particular amount of attorney fees, a trial court must support that amount with factual findings made on the record. See *People v Lewis*, 503 Mich 162, 167-168; 926 NW2d 796 (2018). The court must determine the costs of providing legal assistance to the specific defendant, *id*. at 168, and it must support its factual findings, *id*. at 164-165.

We acknowledge that, at sentencing, the trial court did not provide a sufficient factual basis for the attorney-fee assessment, but Blank's sentencing was not the trial court's final word on

attorney fees. Contrary to Blank's argument, the trial court supported its assessment of $850 in court-appointed attorney fees with specific factual findings at the hearing on the postconviction motion. The trial court eventually explained the amount by reference to its standardized form, which provided an estimated cost on a hearing-by-hearing basis and the actual fees that Blank's attorneys incurred.

There is no published case stating exactly how detailed a trial court's factual findings must be. In *Lewis*, the trial court did not at all support its factual findings regarding the cost of providing legal fees to that defendant. *Lewis*, 503 Mich at 164-165. A recent unpublished opinion factually analogous to the present case suggests that a trial court's factual findings on this issue need not be extensive. See *People v Williams*, unpublished per curiam opinion of the Court of Appeals, issued April 11, 2024 (Docket No. 362305), p 8.[3] There, an indigent defendant filed a postconviction motion challenging the trial court's assessment of $2,000 in attorney fees. *Id*. at 6. The trial court stated that, because the defendant's trial attorneys never submitted an invoice for their estimated fees, the court " 'picked a rate that [it] felt was representatively fair.' " *Id*. at 7. Despite estimating that defense counsel probably earned " '$15,000 to $20,000' " during the defendant's six-day trial, the trial court assessed the defendant $2,000 in attorney fees. *Id*. This Court concluded that the trial court's explanation was adequate, stating that although it was "minimal," it was still "sufficient." *Id*. at 8. This Court stated that the explanation was sufficient because "[t]he trial court reflected on the length of trial and the amount of work the case required." *Id*.

Here, the trial court considered the blank attorney-fee form that attorneys in Grand Traverse County are required to submit as a reference for the cost of counsel's appearance at hearings and found that the cost of those hearings exceeded $850. More importantly, the trial court also considered the attorney-fee form that *Blank's trial counsel* submitted, and the amount of fees that counsel requested exceeded $850. Unlike the trial court in *Williams*, unpub op at 7, which did not go into detail about how it arrived at the attorney fees it assessed, the trial court here went hearing-by-hearing and provided the cost for each hearing listed on the blank form. Though the trial court's statement at sentencing may have been insufficient, at the postconviction hearing, it went well beyond merely picking a representatively fair rate. It reflected on the length of the proceedings and amount of work the case required. Blank does not contest any of these findings in his appellate brief.

Accordingly, because the record in this case does not leave this Court "with a definite and firm conviction that the trial court made a mistake," *Jarrell*, 344 Mich App at 474, the factual findings supporting its assessment of attorney fees are not clearly erroneous.

## IV. MIDC STANDARDS AND EVIDENTIARY HEARING ON INDIGENCY

Blank also argues that the trial court's denial of his request for an indigency hearing violated his due-process rights, equal-protection rights, MCL 780.991(3), and MIDC standards. We disagree for three reasons: (1) the trial court correctly concluded that Blank was not presently

---

[3] "Although an unpublished opinion does not have precedential value, this Court may follow an unpublished opinion if its reasoning is persuasive." *People v Johnson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362236); slip op at 5.

entitled to an evidentiary hearing on indigency; (2) the MIDC standards Blank cites do not apply to impose a different requirement on the circuit court; and (3) Blank has abandoned his equal-protection argument.

First, the trial court correctly concluded that it was not required to hold an evidentiary hearing on Blank's purported indigency until collections began. For an imposition of appointed attorney fees against a criminal defendant to comport with due process, that defendant must be afforded an indigency hearing. *People v Jackson*, 483 Mich 271, 292; 769 NW2d 630 (2009). However, our Supreme Court has held that defendants are not entitled to bring "ability-to-pay-based challenges to the imposition of fees *until enforcement of that imposition has begun*." *Id.* (emphasis added). The trial court stated during the hearing on Blank's motion to waive attorney fees that it was not necessary to have an indigency hearing because the court does not immediately attempt to collect those fees. Blank is not entitled to an indigency hearing until there is an attempt to enforce the attorney-fee assessment in his case. See *Jackson*, 483 Mich at 292. There is no evidence in the record of any such collection attempt. Accordingly, Blank is not entitled to an evidentiary hearing on indigency at this time.

Second, Blank argues that the trial court did not comply with MCL 780.991(3) and the MIDC's standards. We again disagree.

The MIDC is charged with "promulgat[ing] objective standards . . . to determine the amount a partially indigent defendant must contribute to his or her defense." MCL 780.991(3)(f). Under the contribution standard adopted by LARA,[4] an "appointing authority cannot require an indigent defendant to contribute to the cost of their defense."[5] Also, an "appointing authority cannot require a partially indigent defendant" to pay attorney fees "if doing so would cause [a] defendant a substantial financial hardship."[6] The standards on which Blank relies define "[a]ppointing authority" as "the individual or office . . . that determines indigency and approves

---

[4] See Michigan Department of Licensing and Regulatory Affairs, *Notice and Order Approving Standard on Indigency and Contribution* (October 28, 2021), available at <https://michiganidc.gov/wp-content/uploads/2021/10/Hawks_Order_Approving_Indigency_Standard_102821_739492_7.pdf> (accessed January 6, 2025).

[5] MIDC, *Standards, Contribution*, <https://michiganidc.gov/standards/#tab-id-9> (accessed January 6, 2025).

[6] MIDC, *Standards, Contribution* <https://michiganidc.gov/standards/#tab-id-9> (accessed January 6, 2025).

requests for counsel . . . ."[7]  "Local funding unit" is defined as "the governmental entity or entities listed as a grantee in the grant contract with the MIDC."[8]

The trial court determined that it was not a "local funding unit" or "appointing authority." We agree.  Blank has not even attempted to establish that the Grand Traverse Circuit Court meets the definition of a "local funding unit" or an "appointing authority," and there is no evidence in the record to support that it does.  Thus, his argument that the trial court did not comply with the requirements of the MIDC standards assumes that the trial court actually meets one of these definitions.  The standards on which he relies would be irrelevant if the trial court did not fall into one of these definitions.

The "appointing authority" for Grand Traverse County appears to be the local MIDC Coordinator, whose "office *appoints court-appointed attorneys* for Circuit Court cases in . . . *Grand Traverse* . . . count[y] for indigent defendants who request counsel."[9]  In fact, the trial court expressly identified this office as the appointing authority at the motion hearing.  It therefore correctly concluded that it was not the "appointing authority."

As to whether the trial court is a "local funding unit," Blank has not established that the trial court is "the governmental entity or entities listed as a grantee in the grant contract with the MIDC."[10]  We observe that recently-enacted legislation defines a trial court "Funding Unit," as "[a] local unit of government that funds a trial court" or collective local units of government if the court is funded by more than one local unit of government, 2024 PA 47, § 2(c),[11] and although this definition was not in effect at the time of the trial court's decision, it provides support for the court's determination.  Accordingly, because Blank has not established that the circuit court was the "appointing authority" or the "local funding unit," Blank has not established that the MIDC standards he cites apply to the circuit court.

Third, Blank argues that the trial court's court-appointed attorney-fee assessment violates his right to equal protection.  However, Blank does not address the merits of this claim anywhere in his brief.  "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks

---

[7] MIDC, *Standards, Definitions*, "*Appointing Authority*" <https://michiganidc.gov/standards/#tab-id-9> (accessed January 6, 2025).

[8] MIDC, *Standards, Definitions,* "*Local Funding Unit,*" <https://michiganidc.gov/standards/#tab-id-9>, (accessed January 6, 2025).

[9] 13th Circuit Court, *Michigan Indigent Defense Commission* <https://www.gtcountymi.gov/2638/Michigan-Indigent-Defense-COMMISSION-MID#:~:text=The%2013th%20Circuit%20Court%27s%20regional,indigent%20defendants%20who%20request%20counsel> (accessed January 6, 2025) (emphasis added).

[10] MIDC, *Standards, Definitions*, "*Local Funding Unit,*" <https://michiganidc.gov/standards/#tab-id-9>, (accessed January 6, 2025).

[11] The Trial Court Funding Act of 2024 will not become effective until 91 days after the adjournment of the Legislature's 2024 regular session.

-6-

and citation omitted). Accordingly, Blank's allegation of an equal-protection violation is abandoned.

## V. CONCLUSION

For the reasons stated, we conclude it was not error for the trial court to assess Blank $850 in court-appointed attorney fees or to deny his request for an indigency hearing at the time. We therefore affirm.

Although we affirm, we acknowledge that this case exposes a potential conflict between the traditional statutory framework for assessing attorney fees, MCL 769.1k, and the MIDCA, MCL 780.981 *et seq*. As Blank argues, if these two statutes are not reconciled, they pose the potential for a trial court to collect attorney fees that a defendant does not owe because the MIDC appointing authority or funding unit has already paid for them. This might result in a windfall to the trial court or a double recovery. As discussed, those facts are not present here—at least, not yet. We encourage the Legislature to address this issue.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado