580 So.2d 139 (1991)
STATE of Florida, Petitioner,
v.
Gary Stephen BEASLEY, Respondent.
No. 76102.
Supreme Court of Florida.
May 9, 1991.
*140 Robert A. Butterworth, Atty. Gen., and James W. Rogers, Bureau Chief-Criminal Appeals, Asst. Atty. Gen., Tallahassee, for petitioner.
Richard L. Jorandby, Public Defender and Allen J. DeWeese, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for respondent.
McDONALD, Justice.
We review Beasley v. State, 565 So.2d 721, 722-23 (Fla. 4th DCA 1990), in which the district court certified the following question as being of great public importance:
Whether the imposition of costs against an indigent defendant is different than the collection of those costs making the question of ability to pay premature until attempt is made to collect such costs?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative and quash the district court's decision.
Beasley, adjudicated insolvent, pled nolo contendere to cocaine trafficking charges. As part of his sentence, the trial court imposed a $50,000 fine as prescribed by subsection 893.135(1)(b)(1), Florida Statutes (1989), and a five-percent surcharge on that amount pursuant to section 960.25, Florida Statutes (1989). The court also assessed costs pursuant to subsection 27.3455(1)(a), subsection 943.25(3), and section 960.20, Florida Statutes (1989), respectively in the amounts of $200, $3, and $20. On appeal, the district court held that, because the trial court failed to determine Beasley's ability to pay at the sentencing hearing before assessing costs, Mays v. State, 519 So.2d 618 (Fla. 1988), and Jenkins v. State, 444 So.2d 947 (Fla. 1984), required it to remand for the trial court to make such a *141 determination. The district court, however, certified the aforementioned question to this Court.
Both Mays and Jenkins concerned the procedural due process protections accorded an indigent defendant when statutorily mandated costs are implicated. Jenkins involved the assessment of costs under sections 960.20 and 943.25, Florida Statutes (1981), two of the statutes involved in the case at bar.[1] There, we held that a trial judge may impose costs against an indigent defendant, provided:
The state must, however, provide adequate notice of such assessment to the defendant with full opportunity to object to the assessment of those costs. In addition, any enforcement of the collection of those costs must occur only after a judicial finding that the indigent defendant has the ability to pay in accordance with the principles enunciated in Fuller v. Oregon, [417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974)].
444 So.2d at 950. Jenkins sets forth a two-step procedure to ensure that an indigent defendant is accorded due process of law. First, the defendant must be given adequate notice that the costs will be assessed and an opportunity to be heard. Second, prior to enforcing collection of the assessed costs, a court must make a determination of the defendant's ability to pay. See Bull v. State, 548 So.2d 1103 (Fla. 1989) (Ehrlich, C.J., concurring in part and dissenting in part). Because Jenkins had not been given adequate prior notice that the costs would be assessed against him at the sentencing hearing, we held that the assessment violated his due process rights.
In Mays we addressed costs imposed under section 27.3455, Florida Statutes (1985), and observed:
In Jenkins, this Court held that the state must provide a defendant with adequate notice and an opportunity to object to the assessment of costs pursuant to sections 960.20 and 943.25, and that while the trial judge is free to assess such costs against an indigent defendant "any enforcement of the collection of those costs must occur only after a judicial finding that the individual defendant has the ability to pay in accordance with the principles enunciated in Fuller v. Oreqon."
519 So.2d at 619 (emphasis added; citations omitted) (quoting Jenkins, 444 So.2d at 950). Mays, therefore, reaffirmed the procedural due process protections set forth in Jenkins. In Mays, however, section 27.3455 conditioned the accrual of an inmate's gain-time upon the payment of costs. Moreover, the statute required a court to sentence "those persons it determines to be indigent to a term of community service in lieu of costs" and provided that such indigent persons were eligible for accrual of gain-time. Thus, because of this language, we held that the statute required the court to make a determination of indigency at the sentencing hearing prior to assessing costs. Since our decision in Mays, the legislature has amended section 27.3455 by removing the denial of gain-time to those unable to pay costs in addition to the community service option.[2] Hence, Mays is not controlling under the circumstances of the instant case.
*142 Subsequent to Jenkins and Mays we have addressed further the subject of imposition of costs on an indigent defendant. Bull dealt with the assessment of attorney's fees and costs against guilty defendants who used the services of court-appointed counsel because of their indigency. There, we aligned our decision with the requirements of Jenkins, i.e., that a defendant must be given notice and an opportunity to be heard prior to assessment of costs and, before repayment is enforced, a court must determine the defendant's ability to pay. Wood v. State, 544 So.2d 1004 (Fla. 1989), held that the failure to comply with the procedural due process requirements for assessing costs against an indigent defendant, as enunciated in Jenkins, constituted fundamental error.[3]See also Shipley v. State, 528 So.2d 902 (Fla. 1988) (contemporaneous objection is unnecessary for issue to be cognizable on appeal).
Thus, a careful reading of Jenkins and its progeny shows that a trial court is not required to determine a convicted criminal defendant's ability to pay statutorily mandated costs prior to assessing costs unless the applicable statute specifically requires such a determination. It is only when the state seeks to enforce the collection of costs that a court must determine if the defendant has the ability to pay. Our conclusion is consistent with decisions rendered by federal courts which have addressed this issue. In United States v. Pagan, 785 F.2d 378, 381 (2d Cir.), cert. denied, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986), the court examined the procedural due process to be accorded an indigent defendant when mandatory statutory costs are implicated and held:
Thus, the imposition of assessments on an indigent, per se, does not offend the Constitution. Constitutional principles will be implicated here only if the government seeks to enforce collection of the assessments "`at a time when [Pagan is] unable, through no fault of his own, to comply.'"
(Citations omitted.) Accord United States v. Rivera-Velez, 839 F.2d 8 (1st Cir.1988); United States v. Cooper, 870 F.2d 586 (11th Cir.1989).
We now turn to the facts of the instant case. Applying the two-part procedural due process protections as delineated in Jenkins, we first must examine whether Beasley had adequate notice and opportunity to be heard. As to notice, publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the consequences of their actions. Dewberry v. Auto-Owners Insurance Co., 363 So.2d 1077 (Fla. 1978); Sammis v. Bennett, 32 Fla. 458, 14 So. 90 (1893). See Fuller v. Oregon, 417 U.S. 40, 50 n. 11, 94 S.Ct. 2116, 2123 n. 11. Thus, Beasley had adequate notice.[4] Beasley also had an opportunity to be heard at the sentencing hearing and raise any pertinent objections. Having been given adequate notice and an opportunity to be heard, the assessment of costs complied with due process. Under Jenkins, therefore, the district court erred by holding that Beasley had been denied due process because the trial court failed to make a determination of his ability to pay before it assessed the mandatory costs. Any determination of Beasley's ability to pay need be made only when the state seeks to enforce collection of the costs. At that point Beasley could suffer some loss of liberty or property. If that loss were because Beasley simply was too poor to pay, through no fault of his own, his due process rights would be violated. Bearden *143 v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).[5]
We also must address one final point. On rehearing, the district court held that the five-percent surcharge set forth in section 960.25 was characterized best as a "fine" and not a "cost." As a result, the court held that, on remand, the trial court should not address the question of Beasley's ability to pay the surcharge but should limit its inquiry to his ability to pay costs. While the surcharge may quite properly be considered a form of punishment, State v. Champe, 373 So.2d 874 (Fla. 1978), we disagree that such a distinction is controlling in this case. Because the surcharge, like the costs, is statutorily mandated, whether it is a cost or a fine is unimportant from a due process viewpoint. The same two-part procedural protections from Jenkins apply. Provided that the defendant has adequate notice and an opportunity to be heard prior to assessing a mandatory fine, there is no due process violation unless and until the state seeks to enforce collection of the fine without a judicial determination of the defendant's ability to pay. Thus, although we agree with the result reached by the district court on this issue, we disagree with the rationale supporting that decision.
We therefore answer the certified question in the affirmative and quash the district court's decision.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Although the legislature has amended § 960.20 and § 943.25 since our decision in Jenkins v. State, 444 So.2d 947 (Fla. 1984), those changes are not pertinent to our discussion. § 960.20, Fla. Stat. (1989), states in pertinent part:

When any person pleads guilty or nolo contendere to, or is convicted of, any felony, misdemeanor, or criminal traffic offense ... there shall be imposed as an additional cost in the case, in addition and prior to any other cost required to be imposed by law, the sum of $20.
§ 943.25, Fla. Stat. (1989), states in pertinent part:
(3) All courts created by Art. V of the State Constitution shall, in addition to any fine or other penalty, assess $3 as a court cost against every person convicted for violation of a state penal or criminal statute or convicted for violation of a municipal or county ordinance.
[2] § 27.3455, Fla. Stat. (1989), states:

(1) When any person pleads guilty or nolo contendere to, or is found guilty of, any felony, misdemeanor, or criminal traffic offense ... there shall be imposed as a cost in the case, in addition to any other cost required to be imposed by law, a sum in accordance with the following schedule:
(a) Felonies ................... $200
[3] In Wood v. State, 544 So.2d 1004, 1006 (Fla. 1989), we stated that Jenkins "held that court costs could not be assessed against a defendant without adequate notice and a judicial determination that the defendant has the ability to pay." This statement is contrary to our actual holding in Jenkins, and, to that extent, we must recede from that statement.
[4] In light of our holding, we recede from Jenkins to the extent that it requires a trial court to give the defendant actual notice of the imposition of mandatory costs. In any event, Beasley knew that costs would be assessed, as indicated by the following colloquy during sentencing:

MS. CUDDIHY (defense counsel): Judge, could you waive the Trust Fund?
THE COURT: If he's going to be able to pay the fine, he'll be able to pay the Trust Fund. We'll wait and see what happens.
[5] We note that other decisions regarding the treatment of indigents in the criminal justice system have been based on equal protection grounds. E.g., Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). However, as the Court observed in Bearden v. Georgia, 461 U.S. 660, 665, 103 S.Ct. 2064, 2068, 76 L.Ed.2d 221 (1983), "[d]ue process and equal protection principles converge in the Court's analysis in these cases." Bearden noted that a due process analysis has certain advantages, 461 U.S. at 666 n. 8, 103 S.Ct. at 2069 n. 8, but that either approach was equally proper. In fact, we based Jenkins, which examined the issue using a due process analysis, on Fuller v. Oregon, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), which reached its decision under an equal protection analysis.